**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

Nos. 14-1715, 14-1804
_____

In re: Asbestos Products Liability Litigation (No. VI)

PEGGY R. HASSELL, individually and as Personal
Representative of the Estate of Billie L. Hassell, deceased,
                                                  Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Nos. 2-09-cv-90863, 2-01-md-00875)
District Judge: Honorable Eduardo C. Robreno
_____

Argued November 19, 2015

Before: AMBRO, HARDIMAN, and NYGAARD,
*Circuit Judges*.

(Opinion Filed:  May 16, 2016)

Howard J. Bashman
Suite G-22
2300 Computer Avenue
Willow Grove, PA 19090

John D. Roven [Argued]
Roven Kaplan
2190 North Loop West
Houston, TX 77018
            *Counsel for Appellant Peggy R. Hassell*

Joseph E. Richotte [Argued]
Butzel Long
41000 Woodward Avenue
Bloomfield Hills, MI 48304

James E. Wynne
Butzel Long
150 West Jefferson Avenue
Suite 100
Detroit, MI 48226
            *Counsel for Appellee The Budd Company, Inc.*

Holli Pryor-Baze [Argued]
John K. Grantham
Akin Gump Strauss Hauer & Feld
1111 Louisiana Street
44th Floor
Houston, TX 77002
            *Counsel for Appellee Resco Holdings LLC*

---

OPINION OF THE COURT

---

HARDIMAN, *Circuit Judge*.

Peggy Hassell, on behalf of herself and her deceased husband's estate, appeals an order of the District Court dismissing her civil suit against The Budd Company and Resco Holdings LLC. Hassell asserted state law causes of action arising from her husband's exposure to asbestos during the forty years he worked for the Atchison, Topeka and Santa Fe Railway (the Railroad). Budd and Resco moved to dismiss, arguing that Hassell's claims were preempted by the Locomotive Inspection Act, 49 U.S.C. § 20701 *et seq.*, and the Safety Appliance Act, 49 U.S.C. § 20301 *et seq.* The District Court granted the companies' motion, holding that Hassell's claims were preempted by the Locomotive Inspection Act.

In this appeal, Hassell claims that the District Court erred procedurally by dismissing her complaint based on facts that were neither in her complaint nor undisputed. Hassell also contends that the District Court misapplied the preemptive scope of the Locomotive Inspection Act to hold her claims preempted. Because we agree with Hassell's procedural argument, we will vacate the Court's order and remand the case for further proceedings consistent with this opinion.

I

Toward the end of the nineteenth century, the rapid growth of the railroad industry in the United States brought with it numerous accidents and deaths. *See, e.g.*, Charles W.

McDonald, Federal Railroad Administration, The Federal Railroad Safety Program 2–6 (Aug. 1993). In response to these safety concerns and because of the variety of state laws regulating the industry, Congress in 1893 passed the Safety Appliance Act (SAA). Act of Mar. 2, 1893, ch. 196, 27 Stat. 531–32, *amended by* Act of Mar. 2, 1903, ch. 976, 32 Stat. 943, *and* Act of Apr. 14, 1910, ch. 160, 36 Stat. 298; *see also* Lorenzo S. Coffin, *Safety Appliances on the Railroads*, 5 Annals of Iowa 561, 569–80 (1903). Full implementation of the SAA, which required railroads to equip trains with automatic couplers and power brakes, was delayed until 1900. *See* Note, *The Federal Safety Appliance Act as a Regulation of Interstate Commerce*, 3 Mich. L. Rev. 387, 388 (1905). Eleven years later, Congress began regulating locomotive steam boilers through the Boiler Inspection Act (BIA). Act of Feb. 17, 1911, ch. 103, § 2, 36 Stat. 913–14. Soon thereafter, the BIA was amended to cover the entire locomotive as well as its "parts and appurtenances." Act of Mar. 4, 1915, ch. 169, 38 Stat. 1192. The statute as amended has since been known as the Locomotive Boiler Inspection Act, or simply the Locomotive Inspection Act (LIA).[1]

The increased federal regulation of the locomotive industry resulted in conflicts with various state laws. Accordingly, in *Napier v. Atlantic Coast Line Railroad Co.*, 272 U.S. 605 (1926), the Supreme Court was presented with constitu-

---

[1] The current version of the LIA is codified at 49 U.S.C. § 20701 and provides in relevant part that "[a] railroad carrier may use . . . a locomotive or tender on its railroad line only when the locomotive or tender and its parts and appurtenances . . . are in proper condition and safe to operate without unnecessary danger of personal injury."

4

tional challenges to laws in Georgia and Wisconsin that required the Court to decide whether Congress intended "to occupy the entire field of regulating locomotive equipment." *Id.* at 611. The Court noted that the SAA, which included specific requirements, and the BIA, which regulated only boilers, did not preempt the field. *Id.* As amended in 1915, however, the LIA included a "general" power that "extend[ed] to the design, the construction, and the material of every part of the locomotive and tender and of all appurtenances." 272 U.S. at 611. The "broad scope" of this "general" authority led the Court to conclude that Congress, in enacting the LIA, had "occupied the field of regulating locomotive equipment." *Id.* at 607, 613. For that reason, "[b]ecause the standard set by the [Interstate Commerce] Commission must prevail, requirements by the states are precluded, however commendable or different their purpose." *Id.* at 613.[2]

Almost a century later, the Supreme Court revisited the LIA's preemptive scope in *Kurns v. Railroad Friction Products Corp.*, 132 S. Ct. 1261 (2012). Unlike *Napier*—which involved the preemption of state statutes—*Kurns* considered whether the LIA preempted state causes of action. The plaintiffs in *Kurns* asserted state law defective-design and failure-

---

[2] The administration and enforcement of the LIA was originally entrusted to the Interstate Commerce Commission. *See, e.g.*, *Kurns v. R.R. Friction Prods. Corp.*, 132 S. Ct. 1261, 1266 & n.3 (2012). Since 1967, this authority has been vested in the Federal Railroad Administration under the direction of the Secretary of Transportation. *See id.*; *see also, e.g.*, 49 U.S.C. 103(g); Federal Railroad Administration, Inspection and Maintenance Standards for Steam Locomotives, 64 Fed. Reg. 62,828, 62,828 (Nov. 17, 1999).

to-warn claims against the manufacturers of locomotive brake shoes and locomotive engine valves that contained asbestos. 132 S. Ct. at 1265. Underscoring that "*Napier* defined the field pre-empted by the LIA *on the basis of the physical elements regulated*," the Court held that the state law claims were preempted because they were "directed at the equipment of locomotives." 132 S. Ct. at 1269 (emphasis added); *see also id.* at 1270 (Kagan, J., concurring) ("According to *Napier*, the scope of the agency's power under the [LIA] determines the boundaries of the preempted field."). The Court thus rejected the distinction between common law claims and positive law enacted through state legislation or regulation, holding that *Napier*'s "categorical conclusion admits of no exception for state common-law duties and standards of care . . . [because] state 'regulation can be . . . effectively exerted through an award of damages.'" *Id.* at 1269 (quoting *San Diego Bldg. Trades Council v. Garmon*, 359 U.S. 236, 247 (1959)). And by holding the plaintiffs' failure-to-warn claims preempted, the Court also precluded the attachment of state law duties or conditions to locomotive equipment because such legal requirements would "inevitably influence a manufacturer's choice whether to use that particular design." *Id.* at 1268 n.4.

## II

Having summarized the law of field preemption under the LIA, we turn to the parties' dispute in this appeal. Hassell's civil action against Budd and Resco was filed in Texas state court. The case was removed to the United States District Court for the Southern District of Texas and transferred to the Eastern District of Pennsylvania as part of a multidistrict litigation. Hassell then filed an amended complaint as-

serting state law products liability claims based on the following facts.

Between 1945 and the mid-1970s, Hassell's husband Billie was employed as an electrician by the Railroad. Billie's responsibilities included the maintenance and repair of passenger railcars designed and manufactured by Budd's and Resco's predecessors in interest. Steam pipes running underneath those railcars were insulated with material containing asbestos, and he was exposed to asbestos contained in the dust produced during the maintenance and repair of the railcars. As a consequence of this exposure, Billie contracted asbestosis and mesothelioma. He died on May 30, 2009, during the pendency of this lawsuit.

Budd, joined by Resco, moved the District Court to dismiss Hassell's amended complaint, arguing that her state law claims were preempted by the LIA, the SAA, and the Federal Railroad Safety Act (FRSA), 49 U.S.C. § 20101 *et seq.* The District Court denied the motion without prejudice in light of our intervening opinion in *Kurns v. A.W. Chesterton Inc.* (*Kurns I*), 620 F.3d 392 (3d Cir. 2010), and the Supreme Court's decision to grant a petition for writ of certiorari to hear that case. *See* 131 S. Ct. 2959 (2011). By this point in the proceedings, the parties had already completed substantial discovery.

In February 2012, the Supreme Court affirmed our judgment in *Kurns I* and Budd renewed its motion to dismiss (which Resco again joined). *See Kurns*, 132 S. Ct. at 1264. In the company's renewed motion—which it "[a]lternatively" styled as a motion for summary judgment, App. 37a—Budd observed that the Supreme Court in *Kurns* had reaffirmed the scope of LIA preemption as defined in *Napier* and argued that

7

the LIA preempted Hassell's claims because the asbestos-insulated steam pipes on the passenger railcars qualified as locomotive "parts and appurtenances" under the statute. 49 U.S.C. § 20701. Budd claimed that the "pipes were connected to the locomotive, which supplied heat from the locomotive's engine to the pipes," and that "[t]his kind of interconnected system qualifies as an appurtenance of the locomotive." App. 49a. Hassell countered that Budd had produced no evidence to support the company's factual allegations, and that, in any event, *she* had produced evidence that the Railroad had used "power cars" to heat passenger compartments,[3] such that the passenger railcars "would not even have [had] a metaphysical connection to a locomotive." App. 85a. Hassell's argument therefore distinguished between "locomotive appurtenances"—to which she conceded LIA preemption applied—and non-locomotive equipment on passenger railcars, which she contended did not raise preemption concerns. *See* App. 79a.

After hearing argument from the parties, the District Court granted Budd's renewed motion to dismiss Hassell's amended complaint. In doing so, the Court began by construing "parts and appurtenances" under the LIA based on *Southern Railway Co. v. Lunsford*, 297 U.S. 399 (1936). In *Lunsford*, the Supreme Court defined "parts and appurtenances" under the LIA as encompassing "[w]hatever in fact is an integral or essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the Interstate Commerce Commission." *Id.* at 402. Noting that it

---

[3] A "power car" was equipped with a "portable boiler that generated steam for many purposes including the heating of passenger coaches on trains." App. 177a.

had previously found railcar brake shoes to constitute "parts and appurtenances" under the LIA because "they [were] part of the interconnected locomotive braking system" in *Perry v. A.W. Chesterton, Inc.*, 985 F. Supp. 2d 669, 675 (E.D. Pa. 2013), the District Court found that the pipes responsible for Billie's asbestos exposure formed a "system of pipes that connect the railcars and locomotives, which are an essential and integral part of the completed locomotive." App. 7a. Accordingly, the District Court held that Hassell's claims were preempted under the LIA. Hassell filed this appeal.[4]

III

The District Court had diversity jurisdiction to adjudicate Hassell's state law claims under 28 U.S.C. § 1332(a) be-

---

[4] Prior to granting Budd's renewed motion to dismiss, the District Court denied Hassell's motion for leave to file a second amended complaint in which she sought to plead state law claims alleging violations of federal standards of care contained in the LIA and the SAA. The District Court found that such amendments would have been futile because a violation of these statutes triggers strict liability under the Federal Employers Liability Act (FELA), 45 U.S.C. § 51 *et seq.*, FELA claims can be asserted only by railroad employees against their employers (not manufacturers like Budd and Resco), and neither the LIA nor the SAA provides a remedy for a violation of their respective statutory requirements. *See, e.g., Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656, 663 (3d Cir. 2015) (citing *Urie v. Thompson*, 337 U.S. 163, 188–89 (1949)). Hassell has challenged this ruling on appeal, but we decline to reach this issue in light of our disposition.

cause Hassel is a citizen of Texas, Budd and Resco are incorporated and have their principal places of business in states other than Texas, and the amount in controversy exceeds $75,000. *See Hertz Corp. v. Friend*, 559 U.S. 77, 85, 92 (2010); *Johnson v. SmithKline Beecham Corp.*, 724 F.3d 337, 347 (3d Cir. 2013). We have appellate jurisdiction under 28 U.S.C. § 1291.

Our review of the District Court's dismissal of Hassell's amended complaint under Federal Rule of Civil Procedure 12(b)(6) is plenary. *See, e.g.*, *Great W. Mining & Mineral Co. v. Fox Rothschild, LLP*, 615 F.3d 159, 163 (3d Cir. 2010). In reviewing whether Hassell stated a viable claim, we must accept as true all plausible facts alleged in her amended complaint and draw all reasonable inferences in her favor. *See, e.g.*, *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 786 n.2 (3d Cir. 2015). We review the District Court's formulation and application of the test defining the scope of the LIA's field preemption de novo. *See, e.g.*, *Addie v. Kjaer*, 737 F.3d 854, 865 (3d Cir. 2013) (citing *Fed. Kemper Ins. Co. v. Rauscher*, 807 F.2d 345, 348 (3d Cir. 1986)).

IV

A

*Napier* and *Kurns* establish that field preemption under the LIA turns on one fundamental question: is the state regulation or cause of action "directed at the equipment of locomotives"? *Kurns*, 132 S. Ct. at 1268. If it is, the regulation or cause of action is preempted because it falls within the regulatory space assigned by the statute to the Federal Railroad Administration. *See Kurns*, 132 S. Ct. at 1269; *see also, e.g.*, *Del. & Hudson Ry. Co. v. Knoedler Mfrs., Inc.*, 781 F.3d 656,

10

659 n.2, 661–62 (3d Cir. 2015); *Oglesby v. Del. & Hudson Ry. Co.*, 180 F.3d 458, 460 (2d Cir. 1999) (per curiam); *Union Pac. R.R. Co. v. Cal. Pub. Utils. Comm'n* (*CPUC*), 346 F.3d 851, 869 (9th Cir. 2003); *Springston v. Consol. Rail Corp.*, 130 F.3d 241, 245 (6th Cir. 1997); *Mo. Pac. R.R. Co. v. R.R. Comm'n of Tex.* (*MOPAC*), 833 F.2d 570, 576 & n.7 (5th Cir. 1987); *Marshall v. Burlington N., Inc.*, 720 F.2d 1149, 1152 (9th Cir. 1983).

Neither *Napier* nor *Kurns* had to determine precisely *which* mechanical components of a train qualify as the "equipment of locomotives" because the answer was obvious in both cases. At issue in *Napier* were state statutes requiring railroads to install cab curtains and automatic doors in locomotives. 272 U.S. at 208. *Kurns* involved the imposition of state standards of care regarding locomotive brake shoes and engine valves. 132 S. Ct. at 1264. Thus, neither case had to confront the distinction between locomotive equipment and equipment belonging to some other railroad apparatus—in this case, passenger railcars. Nor are we aware of any other federal court of appeals' decision that has had to squarely confront this distinction.

In the absence of clear guidance on the issue—and perhaps justified by a comment we made in *Kurns I*, 620 F.3d at 396 n.5— the District Court relied on *Lunsford*, in which the Supreme Court construed the term "parts and appurtenances" under the LIA to encompass "[w]hatever in fact is an integral and essential part of a completed locomotive, and all parts or attachments definitely prescribed by lawful order of the [Federal Railroad Administration]." 297 U.S. at 402. Although *Lunsford* is not a case about preemption, *see* note 5, *infra*, the implicit logical chain between *Napier* and *Lunsford* inferred by the District Court is clear. The authority delegated

11

by the LIA permits the Federal Railroad Administration to regulate "the locomotive . . . and its parts and appurtenances," 49 U.S.C. § 20701, and those "parts and appurtenances" include anything that is "integral and essential" to the "completed locomotive," *Lunsford*, 297 U.S. at 402. Therefore, because the scope of regulatory authority delegated by the LIA is coextensive with the scope of field preemption under the statute, the District Court reasoned that any state regulation of an "integral or essential" locomotive component is preempted. *See Kurns*, 132 S. Ct. at 1268–69; *see also Napier*, 272 U.S. at 611–13.[5]

---

[5] In light of our holding that the District Court erred procedurally, we express no opinion as to whether *Lunsford* appropriately defines the scope of field preemption under the LIA as set forth in *Napier* and *Kurns*—*Lunsford* simply establishes the legal backdrop applied by the District Court to determine the materiality of facts underlying Budd's preemption defense. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Substantive law will identify which facts are material."). We note, however, that two of our sister courts have declined to embrace *Lunsford* in the context of LIA preemption. *See MOPAC*, 833 F.2d at 576 & n.7 (5th Cir. 1987) ("Contrary to the Commission's assertion, [*Lunsford*] does not stand for the proposition that under the Locomotive Boiler Inspection Act state attempts to regulate are preempted only to the extent they prescribe 'integral or essential' equipment of a complete locomotive."); *Marshall*, 720 F.2d at 1152 ("The ordinary duty of care described in *Lunsford* does not apply in these circumstances, and *Lunsford* in no way affects our holding that the [LIA] preempts any state regulation of locomotive equipment."). As the Fifth

12

B

As a necessary predicate to its conclusion that the asbestos-insulated pipes on the passenger railcars manufactured by Budd and Resco were "integral and essential" to a locomotive, the District Court found that the pipes were joined to create a "system of pipes that connect the railcars and locomotives," and that this system was "an essential and integral part of the completed locomotive" under *Lunsford*. App. 7a. These conclusions cannot be squared with Hassell's amended complaint, however, devoid as it is of any facts establishing a "system of pipes" connecting the railcars to the locomotive. As Hassell observes, the word "locomotive" never even appears in her amended complaint.[6] Thus, the District Court

_____

Circuit observed in *MOPAC*, the Supreme Court in *Lunsford* was not confronted with a question of preemption. *See* 833 F.2d at 576 & n.7. Instead, the issue before the Court was how to define the scope of absolute liability under FELA for alleged violations of the LIA's duty of care. 297 U.S. at 399–400.

[6] The amended complaint's silence on this "system of pipes" or whether the railcar pipes were ever connected in some fashion to a locomotive—*i.e.*, the facts assertedly giving rise to preemption—is unsurprising because federal preemption is an affirmative defense on which the defendant bears the burden of proof. *See, e.g.*, *Hawkins v. Leslie's Pool Mart, Inc.*, 184 F.3d 244, 256 & n.4 (3d Cir. 1999). This allocation of the burden of proof suggests that a motion under Rule 12(c) for judgment on the pleadings is a more appropriate procedural vehicle for dismissing cases on preemption grounds, instead of a motion under Rule 12(b)(6), except for cases in which preemption is manifest in the complaint itself.

necessarily relied on evidence extrinsic to her pleadings to grant Budd's motion.

This was error because "a court considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) may consider *only* the allegations contained in the pleading to determine its sufficiency."[7] *Santomenno ex rel. John Hancock Trust v. John Hancock Life Ins. Co. (U.S.A.)*,

---

*See, e.g.*, *Klayman v. Zuckerberg*, 753 F.3d 1354, 1357 (D.C. Cir. 2014); *S.C. Johnson & Son, Inc. v. Transport Corp. of Am., Inc.*, 697 F.3d 544, 547 (7th Cir. 2012); *Fisher v. Halliburton*, 667 F.3d 602, 609 (5th Cir. 2012). In deciding a motion under Rule 12(c), the court must "view the facts presented in the pleadings and the inferences to be drawn therefrom in the light most favorable to the nonmoving party," and may not grant the motion "unless the movant clearly establishes that no material issue of fact remains to be resolved and that he is entitled to judgment as a matter of law." *Jablonski v. Pan Am. World Airways, Inc.*, 863 F.2d 289, 290–91 (3d Cir. 1988) (quoting *Soc'y Hill Civic Ass'n v. Harris*, 632 F.2d 1045, 1054 (3d Cir. 1980)).

[7] Although phrased in relatively strict terms, we have declined to interpret this rule narrowly. In deciding motions under Rule 12(b)(6), courts may consider "document[s] *integral to or explicitly relied* upon in the complaint," *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis in original), or any "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," *PBGC v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

768 F.3d 284, 290 (3d Cir. 2014) (emphasis added) (citing *Pryor v. Nat'l Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002)). And while district courts are not required to accept merely conclusory factual allegations or legal assertions, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. 662, 678–79 (2009), they still must accept as true all plausible factual allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor, *see Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *Williams v. BASF Catalysts LLC*, 765 F.3d 306, 323 (3d Cir. 2014). Accordingly, the District Court's reliance on facts alleged outside of Hassell's amended complaint constitutes a procedural error under Rule 12(b)(6).[8]

---

[8] Budd contends that Hassell waived her procedural objection by urging the District Court to rule on Budd's motion to dismiss, but we disagree. "[W]aiver is the 'intentional relinquishment or abandonment of a known right.'" *Tri-M Grp., LLC v. Sharp*, 638 F.3d 406, 432 n.1 (3d Cir. 2011) (Hardiman, J., concurring) (quoting *United States v. Olano*, 507 U.S. 725, 733 (1993)). In her brief opposing dismissal, Hassell characterized Budd's motion as posing "questions of law" in which the underlying "facts [were] not in dispute." App. 77a. By arguing to the District Court that Budd's motion was ripe for disposition, Hassell could have waived the argument that the District Court should not have ruled on the motion, but she did *not* waive the argument that the District Court was bound by the procedural limits of Rule 12(b)(6), nor was this argument forfeited for the purposes of appeal. *See id.* (defining forfeiture as the "failure to make the timely assertion of a right").

That said, the District Court's consideration of evidence extrinsic to the complaint does not automatically require reversal. Federal Rule of Civil Procedure 12(d) provides that "[i]f, on a motion under Rule 12(b)(6) or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." *See Messer v. V.I. Urban Renewal Bd.*, 623 F.2d 303, 307 (3d Cir. 1980) ("[W]here matters outside the pleadings are considered by the district court, a motion under [Rule 12(b)(6)] for failure to state a claim upon which relief can be granted will be treated as a Rule 56 motion for summary judgment."); *see also* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1366 (3d ed. 2015).[9] Although Rule 12(d) requires that the parties be given "reasonable notice," the failure to give notice may be excused as harmless error in the absence of prejudice to the nonmoving party. *See, e.g.*, *SBRMCOA, LLC v. Bayside Resort, Inc.*, 707 F.3d 267, 272–73 (3d Cir. 2013) (quoting *Ford Motor*

---

[9] Where, as here, a district court expressly disclaims the use of extrinsic evidence in deciding a motion under Rule 12(b)(6), we have held that "our review is as under a motion to dismiss, even where additional materials were admitted into the record." *Kulwicki v. Dawson*, 969 F.2d 1454, 1562 (3d Cir. 1992). Adherence to *Kulwicki*, however, is "procrustean" when it is clear that the district court nonetheless considered "matters outside of the pleadings" to reach its disposition. *Fagin v. Gilmartin*, 432 F.3d 276, 286 (3d Cir. 2005). And, although the district court in *Kulwicki* permitted the movants to file supplemental information, it chose not to consider those materials and properly considered the motion as one under Rule 12(b)(6). *See* 969 F.2d at 1462.

*Co. v. Summit Motor Prods., Inc.*, 930 F.2d 277, 284–85 (3d Cir. 1991)).

In this case, the District Court did not notify the parties that it was converting Budd's motion to dismiss to a motion for summary judgment, but given that Budd alternatively presented its motion as one seeking summary judgment, it is unclear whether Hassell can demonstrate that she was unfairly prejudiced by the lack of notice. *See In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 289 (3d Cir. 1999) ("Failure to provide notice is harmless error if the plaintiff's complaint would not have survived a motion to dismiss."); *Rose v. Bartle*, 871 F.2d 331, 342 (3d Cir. 1989) ("[T]he judgment may be affirmed if it appears that there is no set of facts on which plaintiffs could possibly recover."); *see also Schering Corp. v. FDA*, 51 F.3d 390, 400 (3d Cir. 1995) (affirming summary judgment despite the district court's failure to give notice because the disputed issue—"the exclusivity of the statutory definition of bioequivalence"—was purely legal in nature). However we might consider the prejudice issue, vacating the order dismissing Hassell's complaint is still required because the District Court improperly applied the standard for summary judgment under Rule 56.

In a typical formulation of the summary judgment standard, it

> is appropriate when the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. In making this determination, we must view the facts in the light most favorable to the nonmoving party and draw all inferences in that party's favor.

*Prowel v. Wise Bus. Forms, Inc.*, 579 F.3d 285, 286 (3d Cir. 2009) (internal quotation marks and citations omitted) (quoting *Norfolk S. Ry. Co. v. Bassell USA Inc.*, 512 F.3d 86, 91 (3d Cir. 2008)). The movant bears the burden of establishing the undisputed facts and entitlement to judgment as a matter of law. *See El v. Se. Pa. Transp. Auth.*, 479 F.3d 232, 237 (3d Cir. 2007) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

Viewed through this lens, summary judgment was not appropriate in this case for at least three reasons. First, neither Budd nor Resco produced any evidence supporting their assertion that the railcar pipes responsible for Billie's asbestos exposure formed an "interconnected system" with the locomotive. App. 50a. Budd's first motion included exhibits in support of purely legal arguments concerning the scope of the LIA and the Federal Railroad Administration's regulatory authority, and its second motion was unaccompanied by any exhibits; Resco's joinder in these motions was similarly devoid

18

of evidentiary support.[10] Thus, the companies failed to carry their burden of proof on the purportedly converted motion. Second, even assuming that evidence for the "interconnected system" could have been gleaned from the record, Hassell attached in her opposition brief affidavit evidence from a former Railroad supervisor showing that, instead of being connected to locomotives, the pipes were connected to "power cars" that separately supplied steam heat to the passenger coaches. She therefore established a genuine dispute of material fact precluding summary judgment. *See NAACP v. N. Hudson Reg'l Fire & Rescue*, 665 F.3d 464, 475 (3d Cir. 2011) ("After the movant shows that there is no genuine issue for trial, the non-moving party then bears the burden of identifying evidence that creates a genuine dispute regarding material facts."). Finally, the standard for summary judgment requires that factual inferences be drawn in the light most favorable to the nonmoving party. Although the facts before the District Court could have supported a reasonable inference that the pipes were connected to locomotives, summary

---

[10] Budd argued in its second motion before the District Court that Hassell conceded the facts giving rise to the company's preemption argument in a Rule 30(b)(6) deposition notice filed by ACF Industries, L.L.C., a former codefendant that is not a party to this appeal. *See* App. 49a (citing ECF No. 28 in the District Court docket). This filing fails to support Budd's contention as it was not even made by Hassell. Further, Budd's insistence in the motion that Hassell did not dispute the company's factual characterizations is misplaced because she was not required to contest Budd's version of the facts necessary to support its preemption defense to establish the viability of her case.

19

judgment would have been improper because there were other facts of record supporting the contrary inference that the pipes were connected to something else. *See, e.g.*, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) ("Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge. . . . The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor."); *see also, e.g.*, *United States v. USX Corp.*, 68 F.3d 811, 827 (3d Cir. 1995). Accordingly, whether viewed from the perspective of Rule 12(b)(6) or Rule 56, on the record as presented to us the District Court's order cannot be affirmed.[11]

\* \* \*

For the foregoing reasons, we will vacate the District Court's order and remand Hassell's case for further proceedings consistent with this opinion.

---

[11] We take no position as to whether summary judgment might be warranted on a different record after further discovery.