**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 16-3627

_____

HAWK MOUNTAIN LLC, a Delaware limited liability company;
GIGI JORDAN, in her capacity as manager of the Hawk Mountain LLC,
and settlor of the Hawk Mountain Trust, and in her individual capacity;
MICHELLE E. MITCHELL, ESQ., Trustee of the Intercession Trust,
beneficiary of the Hawk Mountain Trust;
KIM JORDAN, in her Capacity as Beneficiary of the Intercession Trust,
Appellants

v.

RAM CAPITAL GROUP LLC, a Delaware limited liability company;
RAM REALTY HOLDINGS LLC, a Delaware limited liability company;
JOSEPH A. TROILO, JR., ESQ.; BRUCE KOLLEDA;
*JOSEPH J. TROPIANO, JR; BERNARD EIZEN, ESQ.; *MARK A. KOVINSKY;
JOSEPH T. MOLIERI, ESQ.; DANIELLE STEWART; BARI KUO;
RENEE M. SIGLOCH; FREDERICK FORTE; PATRICK WALSH;
RAYMOND A. MIRRA, JR.; RAM CAPITAL II, LLC;
VIRGINIA L. HALL; SHELLY DEMORA

*(Amended per Clerk's Order dated 10/14/2016)

_____

On Appeal from the United States District Court
for the District of Delaware
(D. Del. No. 1-13-cv-02083)
District Judge:  Honorable Sue L. Robinson

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
April 6, 2017

Before:  CHAGARES, SCIRICA and FISHER, *Circuit Judges*.

(Opinion Filed:  May 12, 2017)

―――――――――

OPINION[*]

―――――――――

FISHER, *Circuit Judge*.

In a case awash in apparent scandal our ruling today is decidedly ordinary: The

plaintiffs' civil claims under the Racketeer Influenced and Corrupt Organizations Act, or

RICO, are time-barred.[1]  We'll affirm their dismissal.

I.

Gigi Jordan, founder of a successful healthcare business, claims her ex-husband

Raymond Mirra and a host of other defendants worked together for years to defraud her

out of $225 million. The alleged scheme was fourfold.

First, in April 2002 and January 2003 Mirra and others fraudulently opened new

Merrill Lynch joint accounts in Mirra and Jordan's names and converted Jordan's

personal accounts to joint accounts. Then, forging Jordan's signature on wire-transfer and

loan forms, they stole millions of dollars from her. Jordan didn't know about any of it.

Second, between 1996 and 2006 Mirra and others robbed Jordan of her equity in

various real properties by fraudulently adding Mirra's name to the warranty deeds and

selling the properties off at a premium, all without Jordan's knowledge.

―――――――――――――――――――

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.
[1] 18 U.S.C. §§ 1961–68.

Third, in 2002 Mirra and others lied to Jordan to convince her to create Hawk Mountain Trust and to contribute millions of dollars to it. Jordan's son was to be the beneficiary and two of the defendants — Joseph Troilo and Bruce Kolleda — would serve as trustees. Mirra, Troilo, Kolleda, and others then forged Jordan's signature on numerous documents to wrest control of the trust, after which they siphoned millions of dollars from it and Hawk Mountain LLC, the trust's main asset. When Jordan's son died in February 2010, a dispute over the trust corpus ensued. In 2011 Troilo and Kolleda sought to resolve it in a Pennsylvania state court but the case was dismissed for want of jurisdiction. So Troilo and Kolleda petitioned a Delaware state court for relief in March 2012, attaching the forged trust documents to their petition. Jordan says she incurred legal fees defending against these suits.

Finally, in early 2008 Jordan pursued a business and financial separation from Mirra for which she retained her own lawyer. The split was memorialized in a separation and distribution agreement, or SDA, signed on March 12, 2008. The SDA contained "outright lies" and "intentional omissions" concerning the existence and true value of Mirra and Jordan's jointly held companies, real properties, and bank accounts.[2] Jordan says she lost millions of dollars because of it.

Jordan — alongside Michelle Mitchell, Hawk Mountain LLC, and her mother Kimberly Jordan — sued the defendants in the District Court, bringing civil RICO

---

[2] J.A. 331.

claims. In a thorough report and recommendation the Magistrate Judge found the plaintiffs' RICO claims time-barred. The District Judge agreed and granted the defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6).[3] This appeal followed.

## II.

The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1367(a). We have it under 28 U.S.C. § 1291. We exercise plenary review of a Rule 12(b)(6) dismissal, affirming if the plaintiffs' claims are implausible.[4] For a defendant to prevail on a limitations defense in a motion to dismiss, the plaintiff's tardiness in bringing her claims must be apparent from the materials properly before the court.[5]

## III.

## A.

The plaintiffs ask us to reverse, contending their civil RICO claims are timely. This we decline to do. These claims — lodged on December 23, 2013 — accrued well

---

[3] The District Court also declined supplemental jurisdiction of the plaintiffs' state law claim for nonpayment of a promissory note. The plaintiffs don't discuss this claim on appeal, so we see no reason to either.

[4] *In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016); *see Ashcroft v. Iqbal*, 556 U.S. 662, 677–80 (2009).

[5] *See W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 105 n.13 (3d Cir. 2010).

before December 23, 2009. They're time-barred under RICO's four-year limitations period.[6]

We adhere to an injury-discovery rule for RICO civil actions: The clock starts when the plaintiff knew or should have known of her injuries.[7] A plaintiff is on inquiry notice of her wounds when the circumstances would have lead a reasonable person to discover them through due diligence.[8] The defendant must point to "storm warnings" — information that would have alerted a reasonable person that misleading statements or significant omissions were probably made.[9] If that happens the plaintiff must show that, heeding those storm warnings, she exercised reasonable diligence but couldn't find and avoid the storm.[10]

We agree with the District Court that the SDA put the plaintiffs on inquiry notice of their alleged injuries no later than March 2008 when the agreement was negotiated and executed. The SDA contained objective storm warnings. Its second page said Mirra and Jordan agreed that "Schedule 2.1.1" set out the assets they held a joint interest in.[11] Among the assets conspicuously listed there were the very Merrill Lynch joint accounts that Jordan says the defendants opened or converted without her knowledge and used

---

[6] *See Cetel v. Kirwan Fin. Grp., Inc.*, 460 F.3d 494, 507 (3d Cir. 2006).
[7] *Id.*
[8] *Id.*
[9] *Id.*
[10] *Id.*
[11] J.A. 371.

repeatedly to steal from her.[12] Schedule 2.1.1 also omitted three real properties — valued at $8 million combined — that the plaintiffs said the defendants fraudulently sold without Jordan's knowledge.[13] These features of the SDA, we think, would have alerted a reasonable person in March 2008 that fraud was probably afoot.

Facing storm warnings the plaintiffs failed to exercise reasonable diligence to attempt to discover their injuries. According to the complaint Jordan did nothing after reviewing the SDA with her lawyer. She didn't, for example, pull her Merrill Lynch account statements or ask to look at documents related to the three omitted properties. Nor does she allege anything that plausibly prevented her from doing so. We reject her conclusory assertion that she should be excused from inquiry notice of these black-and-white SDA provisions merely because some defendants may have been her fiduciaries. In light of what the SDA revealed, the plaintiffs were on inquiry notice of their injuries no later than March 12, 2008, well before December 23, 2009.

The plaintiffs say their fraud allegations stemming from the 2011 and 2012 state-court trust lawsuits render their RICO claims timely against Troilo and Kolleda. We disagree. Even if filing a lawsuit grounded in fraud can be a predicate act under RICO,[14]

---

[12] J.A. 382 (listing the "Account Holder" of these Merrill Lynch accounts as "Joint").

[13] *See* J.A. 318–22, 329–30 (complaint alleging the fraudulent sale of three real properties without Jordan's knowledge); J.A. 383 (Schedule 2.1.1 omitting these properties).

[14] Some courts suggest it can't. *See, e.g., Bixler v. Foster*, 596 F.3d 751, 758 (10th Cir. 2010); *Raney v. Allstate Ins. Co.*, 370 F.3d 1086, 1088 (11th Cir. 2004) (citing *United States v. Pendergraft*, 297 F.3d 1198, 1207 (11th Cir. 2002)).

we agree with the District Court that Troilo and Kolleda didn't commit "*separable*, new" predicate acts[15] in filing these state-court actions. The plaintiffs say Troilo and Kolleda attached forged trust documents — executed in December 2002 and November 2009 — to their state-court petitions and referenced them in their pleadings. But Troilo and Kolleda did so, the complaint alleges, to "invoke a judicial imprimatur" on their fraudulent efforts between 2002 and 2007 to seize control of the trust.[16] The plaintiffs can't use new acts as a "bootstrap" to recover for injuries "caused by other earlier predicate acts that took place outside the limitations period."[17] The District Court was right to reject these assertions. The plaintiffs' civil RICO claims are time-barred.

## B.

The plaintiffs end saying the District Court abused its discretion by declining to grant them leave to amend their complaint a third time. We don't think it did. In objecting to the Magistrate Judge's findings that their RICO claims are time-barred, the plaintiffs told the District Court that "[b]ased on . . . discovery" they were "confident" they "could prepare a Third Amended Complaint that would fix any defects."[18] But no proposed amended complaint was attached to that filing and the plaintiffs cited only Gigi Jordan's May 2016 responses to interrogatories for support. There Jordan admitted she

---

[15] *Klehr v. A.O. Smith Corp.*, 521 U.S. 179, 190 (1997) (emphasis added).

[16] J.A. 315, 317–18; *see* J.A. 291–301 (alleging fraudulent transfers from the trust and LLC to the defendants between 2002 and 2007).

[17] *Klehr*, 521 U.S. at 190.

[18] J.A. 772.

7

only "began the process of collecting documents" germane to her claims shortly after February 2010, long after March 2008 when the SDA put her on inquiry notice of her injuries.[19] And when asked what stopped her from discovering her injuries "prior to 2010," Jordan said nothing about what she did after reviewing the SDA with her lawyer in March 2008.[20] The plaintiffs say, correctly, that leave to amend should be granted freely when justice so requires. But it may also be denied where amendment would be futile.[21] Given what the plaintiffs presented in their objections to the Magistrate Judge's conclusions, we see no reason why the District Court here abused its discretion in deeming amendment futile. Dismissal was warranted.

## IV.

For these reasons, we'll affirm the District Court's order.

---

[19] J.A. 781.

[20] *See* J.A. 782–84 (describing actions taken only in December 2009 and thereafter).

[21] *Budhun v. Reading Hosp. & Med. Ctr.*, 765 F.3d 245, 259 (3d Cir. 2014).