FILED
United States Court of Appeals
Tenth Circuit

April 3, 2020

Christopher M. Wolpert
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENND CIRCUIT

NANCY LITTLE, individually and as personal representative of the estate of Robert L. Rabe,

Plaintiff - Appellee,

v.

THE BUDD COMPANY, INC.,

Defendant - Appellant.

No. 19-3014

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(D.C. NO. 5:16-CV-04170-DDC)

Toby Crouse, Crouse, LLC, Overland Park Kansas (Vincent E. Gunter, Rasmussen, Dickey & Moore, LLC, Kansas City, Missouri; and Clayton J. Kaiser, Foulston Siefkin LLP,Wichita, Kansas, with him on the briefs), for Appellant.

John Roven, Roven-Kaplan, LLP, Houston, Texas (Blain D. Myhre, Blain Myhre, LLC, Englewood, Colorado, with him on the brief), for Appellee.

Before **HOLMES**, **MURPHY**, and **PHILLIPS**, Circuit Judges.

**MURPHY**, Circuit Judge.

# I.  INTRODUCTION

Robert Rabe worked as a pipefitter in an Atchison Topeka & Sante Fe Railroad ("ATSF") repair shop.  In that capacity, he replaced pipe insulation on passenger cars manufactured by The Budd Company ("Budd").  Rabe died from malignant mesothelioma.  Nancy Little, individually and as personal representative of Rabe's estate, brought state common-law tort claims against Budd, claiming Rabe died from exposure to asbestos-containing insulation surrounding the pipes on Budd-manufactured railcars.  A jury ruled in Little's favor.  On appeal, Budd asserts Little's state tort claims are preempted by the Locomotive Inspection Act ("LIA"), 49 U.S.C. §§ 20701 to 20703.  Budd's theory on appeal is that the claims are preempted because all passenger railcars are "appurtenances" to a complete locomotive.  *See id.* § 20701 (requiring all locomotives and their appurtenances to comply with LIA); *Kurns v. R.R. Friction Prods. Corp.*, 565 U.S. 625, 637-38 (2012) (holding preempted all state tort claims that attempt to regulate LIA-covered locomotive equipment).  Because Budd did not raise this issue before the district court, and because Budd does not seek plain-error review, this particular assertion of error is waived.  Alternatively, Budd asserts Little's tort claims are preempted by the Safety Appliance Act ("SAA"), 49 U.S.C. §§ 20301 to 20306.  This assertion, however, is foreclosed by the Supreme Court's decision in *Atlantic Coast Line Railroad Co. v. Georgia*, 234

U.S. 280 (1914).  Accordingly, this court exercises jurisdiction pursuant to 28 U.S.C. § 1291 and **affirms** the district court's judgment.

## II.  BACKGROUND

Because the issues raised by Budd on appeal are purely legal in nature, the relevant background facts are mostly procedural in nature.  Because this appeal is before this court following a jury verdict, we state the facts in the light most favorable to the jury's decision.  *See Macsenti v. Becker*, 237 F.3d 1223, 1242 (10th Cir. 2001).

In 2012, Rabe died of malignant mesothelioma.  Rabe was a pipefitter for forty years with ATSF's Topeka car shops, a maintenance facility for non-motorized passenger railcars.  No locomotives were serviced at ATSF's car shops.  Budd, a manufacturer of passenger cars, sold hundreds of such cars to ATSF during the 1950s and 1960s.

On arrival at the car shops, passenger cars were hoisted onto tripods to reveal the undercarriage.  The car shops employed pipefitters, like Rabe, who worked under the cars removing, repairing, insulating, and reinstalling a maze of steam, water, and air conditioning pipes.  All types of pipe were insulated with asbestos; a "cotton-like material" in a black jacket that wrapped around the pipes.  Over time, the black jacket deteriorated and the underlying asbestos disintegrated into pieces and particles.  After pipefitters stripped the old insulation away from

the pipes, laborers disposed of it with shovels, brooms, and wheelbarrows.  This created dusty conditions in the car shops.[1]

Steam, water, and air conditioning pipes ran alongside one another in the undercarriage of Budd-manufactured passenger cars, with each type of pipe having different terminal connections.  Ultimately, after the cars were assembled and assigned to trains, the steam pipes connected to either a boiler in the rear of locomotives or steam generator cars containing their own boilers.  These steam generator cars were independent of, and unconnected to, any locomotive.  Rabe also worked on asbestos-wrapped air conditioning and water pipes.  Each car had its individual water tank and piping, not connected to the steam line.  Budd's mechanical specifications revealed that each air conditioned car during Rabe's tenure had electro-mechanical compressors not powered by steam.  Both water and air conditioning pipes, therefore, had zero connection to any steam line or locomotive.

After Rabe's death, Little filed an action against Budd for survival and wrongful death.  In addition to other claims not at issue in this appeal, Little asserted state law causes of action sounding in negligence, strict liability/design defect, and failure to warn.  In response,  Budd filed a Fed. R. Civ. P. 12(c)

---

[1]Budd concedes Rabe's mesothelioma was caused by exposure to asbestos. *Little v. Budd Co.*, 339 F. Supp. 3d 1202, 1220 (D. Kan. 2018).

motion for judgment on the pleadings.  Budd argued that, taken together, LIA and

SAA preempted all state-law claims, whether based on positive or common law,

relating to train equipment.[2]

The district court denied Budd's Rule 12(c) motion, concluding, at least at

the pleading stage, neither LIA nor SAA independently preempted Little's claims

and, therefore, they did not do so jointly.  *Little v. Budd Co.*, No. 16-4170, 2018

WL 398458, at *5-9 (D. Kan. Jan. 12, 2018).  As to LIA, the district court

concluded Little's complaint did not conclusively establish that her state-law

causes of action were directed at the equipment of locomotives.  *Id.* at *6 (citing

*In re Asbestos Prods. Liab. Litig. (No. VI)*, 822 F.3d 125, 131 (3d Cir. 2016)).

The district court noted Little's complaint did not establish either that

(1) passenger railcars are locomotives or (2) "pipe insulation in passenger railcars

is an 'integral and essential part of a completed locomotive'" so as to qualify as a

part or appurtenance thereof.  *Id.* (quoting *S. Ry. Co. v. Lunsford*, 297 U.S. 398,

[2]In a reply in support of its Rule 12(c) motion, Budd made clear it was not arguing, at that procedural juncture, that LIA independently preempted Little's state-law claims.  Budd recognized questions of fact could exist as to whether steam pipes were a possible appurtenance to a locomotive.  In so recognizing, Budd acknowledged it was litigating a case similar to Little's in the Third Circuit, *In re Asbestos Products Liability Litigation (No. VI)*, 822 F.3d 125 (3d Cir. 2016). At issue in *Asbestos Litigation (No. VI)* was whether asbestos-wrapped steam pipes were appurtenances to a locomotive for purposes of LIA preemption.  *Id.* at 131-36.  The Third Circuit concluded material issues of fact existed as to that question because there was at least some evidence the source of steam was "power cars" rather than locomotives.  *Id.* at 135.

402 (1936)). As to SAA, the district court concluded its preemptive effect was limited to railcar "safety appliances" and Little's complaint did not establish that the pipe insulation at issue in this case was a safety appliance for purposes of SAA. *Id.* at *8. Finally, the district court indicated Budd had identified no precedent for supporting its theory of "joint preemption." *Id.* at *9 ("[T]his argument theorizes that adding the two Acts together achieves a result that neither Act, by itself, can achieve. [Budd] cites no case law that has reached such a sweeping conclusion.").

After the parties conducted discovery, Budd sought summary judgment. As relevant to the issues on appeal, Budd's summary judgment motion asserted as follows: (1) Little's tort claims were preempted by LIA because Rabe "was injured from exposure to carcinogenic insulation that was part of a trainwide heating system powered by the locomotive," meaning "the heating system constituted a locomotive appurtenance"; and (2) Little's tort claims were preempted by SAA because the asbestos "insulation constituted a railcar safety appliance."

The district court denied Budd's motion for summary judgment. *Little v. Budd Co.*, 339 F. Supp. 3d 1202 (D. Kan. 2018). As to the question of LIA preemption, the district court concluded there were disputed issues of fact that precluded the determination as a matter of law that railcar heating systems were

-6-

locomotive appurtenances. *Id.* at 1211-13. In particular, there was evidence in the record indicating Budd "designed the main steam lines of all the passenger rail cars to connect to each other and their power source—which sometimes (albeit 'most infrequently') was a steam generator car, not a locomotive." *Id.* at 1212. In addition, the district court noted evidence existed demonstrating that asbestos insulation was used on water and air conditioning pipes, pipes that were never connected to the steam lines or the locomotive. *Id.* at 1213. As to SAA preemption, the district court ruled as follows:

> the court concludes that Congress did not intend to occupy the entire field of railcar safety appliances when it enacted the SAA. Instead, the court concludes, Congress just intended to regulate the subject of those devices that are listed in the statute. Plaintiff's state law claims here rest on her father's exposure to asbestos-containing pipe insulation. The SAA never lists pipe insulation as one of the safety features that railroad carriers must attach to their railcars. The court thus holds that the SAA does not preempt plaintiff's state law claims based on asbestos-containing pipe insulation.

*Id.* at 1217 (quotation, citation, and footnote omitted). In denying Budd summary judgment, however, the district court made clear Budd was entitled to reargue both of its preemption defenses "on a full trial record." *Id.* at 1218.

Before trial, both parties filed motions in limine to limit expert opinion regarding the coverage of LIA and SAA. Little sought to prevent Budd's Industrial Hygienist from offering opinions that asbestos pipe covering constituted a safety appliance. Budd sought to prevent Little's expert, a retired

Federal Railroad Administration ("FRA") official, from explaining the FRA's application of LIA and SAA. The parties ultimately resolved these dueling motions through a "Stipulation Regarding Federal Preemption." Budd agreed not to argue before the jury that pipe insulation was a safety appliance, a "device intended for the safety of employees," or a "locomotive part or appurtenance." Little agreed to withdraw the video of her FRA expert.

At the close of Little's case, Budd filed a Fed. R. Civ. P. 50(a) "Motion for Directed Verdict based on Federal Preemption." The motion reasserted Budd's claim SAA preempts all forms of state regulation over railcar equipment intended for the protection and safety of railroad employees, not just the specific safety appliances listed in the Act. Notably, the issue of LIA preemption was not raised in Budd's Rule 50(a) motion. The district court denied Budd's motion for a directed verdict in an oral ruling from the bench, specifically noting it was denying the motion for those reasons it previously articulated in denying Budd's request for summary judgment. At trial, Budd proposed no jury instructions or factual submissions to the jury on either of its proffered preemption defenses. The jury returned a verdict for Little. It concluded the total damages "sustained by plaintiff Nancy Little, Individually and as Personal Representative of the Estate of Robert L. Rabe" was $139,500.00. The jury further concluded that

seven percent of the fault was attributable to Budd and ninety-three percent was attributable to ATSF.

After the jury rendered a verdict in Little's favor, Budd sought judgment as a matter of law under Fed. R. Civ. P. 50(b). In addition to renewing the issue of SAA preemption set out in its Rule 50(a) motion, Budd also attempted to revitalize its LIA preemption defense. As to the issue of LIA preemption, Budd claimed "factual testimony from [Little's] witnesses," proved "insulated steam lines were appurtenances to the locomotive." The district court denied that portion of Budd's Rule 50(b) motion based on SAA preemption for the reasons it previously articulated in denying Budd's motion for summary judgment. As to the issue of LIA preemption, the district court assumed, without deciding, that Budd did not waive the issue by failing to raise it in its Rule 50(a) motion. It concluded, nevertheless, that Budd's motion failed on the merits:

> [Little] asserts that [Budd] failed to offer evidence at trial establishing that its pipe insulation is a locomotive appurtenance as a matter of law. The court agrees. [Budd] cites . . . trial testimony . . . that [Budd's] insulated steam pipes ran under the railcars and connected directly to locomotives. But that wasn't the only evidence the jury heard on this issue. [Little] presented evidence that decedent was exposed to asbestos dust from insulation covering air-conditioning and water lines running under [Budd's] railcars. Those pipes connected to a water tank—not the locomotive. The parties never asked the jury to decide—explicitly—whether [Budd's] steam pipes qualify as a locomotive appurtenance. But from the facts adduced at trial, it was reasonable for the jury to conclude that the decedent was exposed to asbestos dust from equipment that never connected to the locomotive. Thus, on the evidentiary record created

during the trial, the court cannot conclude that the LIA preempts [Little's] claims as a matter of law.

### III.  ANALYSIS

On appeal, Budd contends the district court erred in determining Little's state common law tort claims are not preempted by LIA or SAA.  To the extent the preemption issues advanced by Budd on appeal are preserved, this court's review is de novo.  *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1096 (10th Cir. 2017) (holding that existence of federal preemption is a legal issue).  On the other hand, absent extraordinary circumstances, arguments raised for the first time on appeal are waived.  *McDonald v. Kinder-Morgan, Inc.*, 287 F.3d 992, 999 (10th Cir. 2002).  This is true whether the newly raised argument is "a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented at trial."  *Id.* (quotations omitted); *see also Lyons v. Jefferson Bank & Tr.*, 994 F.2d 716, 721 (10th Cir. 1993) ("[A] party may not lose . . . on one theory of the case, and then prevail on appeal on a different theory.").

### A.  LIA

On appeal, Budd argues Little's state common law claims are preempted by LIA because passenger railcars are locomotive appurtenances.  As should be clear from the procedural recitation set out above, however, Budd never made this argument at any point before the district court.  Instead, Budd argued asbestos-

wrapped pipes that delivered steam from the locomotive to the railcar heating systems were locomotive appurtenances.

For instance, Budd's motion for summary judgment specifically argued it was the heating system that was an appurtenance for purposes of LIA preemption. App. at 266 ("Little claims that her father was injured from exposure to carcinogenic insulation that was part of a trainwide heating system powered by the locomotive. Are Counts 1–3 preempted because the heating system constituted a locomotive appurtenance?"). At no point in that motion did Budd ever assert the relevant unit of assessment for purposes of resolving the question of LIA preemption was the entire railcar. Instead, Budd's summary judgment memorandum was laser-focused on the asbestos-wrapped pipes:

> The LIA preempts all State regulation of locomotive appurtenances. Ms. Little alleges that her father was exposed to railcar pipe insulation that contained asbestos. Budd manufactured railcars with a main steam pipe that ran underneath the railcar, which was designed to attach to the same pipe underneath other railcars and to the locomotive. The locomotive supplied steam to these pipes to heat the trailing railcars. Budd wrapped the pipes with insulation containing asbestos.
>
> This kind of interconnected heating system qualifies as a locomotive appurtenance, as the word *appurtenance* was understood when Congress enacted the LIA:
>
> > Ap*purt*e*nance (#), n. . . . an adjunct; an appendage; an accessory; something annexed to another thing more worthy . . . .

Importantly, the word adjunct meant "something joined or added to another thing, but not essentially a part of it." This describes the heating system perfectly.

One district court has agreed that a trainwide heating system powered by the locomotive is a locomotive appurtenance. In *In re Asbestos Products Liability Litigation*, the Eastern District of Pennsylvania ruled that asbestos claims based on exposure to pipe insulation are preempted when the insulation was part of the heating system powered by the locomotive.

App. at 273-74 (footnotes omitted). Then again, in the conclusion of its memorandum in support of summary judgment, Budd asserted Little's state-law claims were preempted because "[t]he heating system is a locomotive appurtenance because it was designed to be connected to, and powered by, the locomotive." Likewise, Budd's Rule 50(b) motion was focused exclusively on the argument it was the insulated steam pipes that constituted an appurtenance. Furthermore, in making that argument, Budd recognized that was the argument it had made throughout the case before the district court:

In prior motions and memoranda defendant Budd advanced the position that the insulated steam pipes running under the railcars are appurtenances to the locomotive since they are connected directly to the locomotive. The court denied the pretrial motions for a variety of reasons, one being factual. At trial witnesses James Shaw and Nate Morales testified that the insulated steam pipes running under the railcars, which is what plaintiff proved exposure to, were connected directly to the locomotives which generated the steam. Therefore, there is an ample evidentiary predicate for a finding as a matter of law that plaintiff's claims are preempted under the LIA because the insulated steam lines are appurtenances to the locomotive. . . .

App. at 1596-97.

-12-

The record verifies that at no point in the proceedings before the district court did Budd ever argue that Little's state-law claims were preempted because each and every railcar is an appurtenance to the locomotive to which it is attached. Because the issue was not raised below, and because Budd has not offered any (let alone an extraordinary) justification for its failure to do so, this issue is waived. *McDonald*, 287 F.3d at 999; *see also Richison v. Ernest Group, Inc.*, 634 F.3d 1123, 1128 (10th Cir. 2011).[3]

_____

[3]In attempting to resist this conclusion, Budd asserts it raised the issue in its Rule 12(c) motion. In particular, Budd cites to pages 104-07 of the appendix, a portion of its Rule 12(c) motion asserting LIA and SAA, jointly, result in "trainwide preemption." This assertion is based on a mischaracterization of the record. At no point in its Rule 12(c) arguments in favor of trainwide preemption does Budd assert such preemption flows from the railcar's status as an appurtenance to a locomotive. Instead, Budd argued LIA and SAA broadly preempt the entire field of train safety equipment, without regard to whether the relevant device or part is a locomotive appurtenance or listed in the SAA. Indeed, Budd made this point crystal clear in its reply in support of its Rule 12(c) motion when it argued as follows:

> Budd argues that the two statutes operate in tandem to preempt State regulation of train equipment. For this reason, *Lunsford* [a Supreme Court case dealing with LIA preemption] is irrelevant to this Motion. It matters not whether a piece of equipment is a locomotive part or appurtenance or railcar safety equipment. If the LIA and the SAA preempt State regulation of train equipment—and they do for the reasons argued in this Reply and in Budd's opening brief—then it is irrelevant how any individual piece of equipment is characterized.

App. at 214. Thus, even under the most solicitous reading, it cannot be reasonably argued that Budd's Rule 12(c) motion raised and preserved the theory

(continued...)

-13-

**B. SAA**

SAA "govern[s] common carriers by railroad engaged in interstate commerce." *Gilvary v. Cuyahoga Valley Ry. Co.*, 292 U.S. 57, 60 (1934). It requires railroad carriers to equip railcars with listed safety features, including designated types of couplers, brakes, running boards, and handholds. 49 U.S.C. § 20302(a). The list of required features set out in § 20302(a) does not include insulation of any kind. Nevertheless, Budd asserts the asbestos insulation at issue in this case relates to railroad worker safety and is, thus, regulated by SAA. That is, Budd asserts, whether by statute or common law cause of action, states cannot regulate any railcar safety device whether the device is listed or not in SAA.

Budd's strikingly broad proposition is foreclosed by the Supreme Court's decision in *Atlantic Coast Line Railroad Co. v. Georgia*, 234 U.S. 280 (1914). In *Atlantic Coast Line*, the Court addressed a railroad company's challenge to a Georgia statute mandating headlights on locomotives. The railroad company claimed, inter alia, that with SAA, Congress had occupied the field to "promote the safety of railway operations." *Id.* at 293. *Atlantic Coast Line* decisively rejected this argument, concluding SAA's preemptive field applied only to those safety devices listed in the Act. *Id.* at 293-94 ("It does not appear, however, . . .

---

³(...continued)
it advances on appeal in support of preemption.

-14-

that Congress . . . has established any regulation so far as headlights are concerned. As to these, the situation has not been altered by any exertion of Federal power, and the case stands as it has always stood; without regulation, unless . . . supplied by local authority."); *see also Little*, 339 F. Supp. 3d at 1215-16 (discussing at length the decision in *Atlantic Coast Line*).

Budd asserts, however, that the Supreme Court broadened the preemptive reach of SAA with its decisions in *Southern Railway Co. v. Railroad Commission of Indiana*, 236 U.S. 439, 446 (1915), and *Gilvary*, 292 U.S. at 60-61. This argument is entirely unconvincing. It is certainly true, as recognized by the district court, that the Supreme Court used "more sweeping language" in these cases to describe the scope of SAA preemption. *Little*, 339 F. Supp. 3d at 1216. That language, however, must be considered in context. In both *Southern Railway* and *Gilvary*, the Court was dealing with safety devices specifically listed in SAA. *S. Ry.*, 236 U.S. at 444 (grab irons)[4]; *Gilvary*, 292 U.S. at 52 (automatic coupler).[5] Given that both *Southern Railway* and *Gilvary* involve covered safety devices, in which preemption is obvious, and that neither purported to alter or

[4]*See* 49 U.S.C. § 20302(a)(2) (requiring "secure grab irons or handholds" on the ends and sides of a covered "vehicle" "for greater security to individuals in coupling and uncoupling vehicles").

[5]*See* 49 U.S.C. § 20302(a)(1)(A) (requiring use of "couplers coupling automatically by impact, and capable of being uncoupled, without the necessity of individuals going between the ends of the vehicles").

overrule *Atlantic Coast Line*, *Atlantic Coast Line* remains binding as to the nonpreemptive effect of SAA on devices not specifically listed in the Act. This is especially true given that the Supreme Court has continued to rely on *Atlantic Coast Line* in noting the limited preemptive impact of SAA. *See Atchison, T. & S.F. Ry. Co. v. Scarlett*, 300 U.S. 471, 475 (1937) (holding that when the claim involved an allegedly negligently placed brace rod, a piece of equipment not listed in SAA, "[t]he law to be applied . . . is the common-law rule of negligence, and not the inflexible rule of the [SAA]"); *Napier v. Atl. Coast Line R. Co.*, 272 U.S. 605, 611 (1926) ("Does the legislation of Congress manifest the intention to occupy the entire field of regulating locomotive equipment? Obviously, it did not do so by the [SAA], since its requirements are specific.").

Alternatively, assuming this court is unconvinced by its argument that the Supreme Court has abandoned its holding in *Atlantic Coast Line*, Budd asks this court to assume the Supreme Court would do so if presented with the question. In so arguing, Budd notes that in the years after the decision in *Atlantic Coast Line*, the Supreme Court has adopted a much more robust form of preemption as to matters within the cognizance of LIA. *See Kurns*, 565 U.S. at 631-34 (describing capacious nature of LIA preemption). In so arguing, Budd is asking this court to undertake an analysis the Supreme Court has indicated is forbidden. That is, even entertaining the dubious assumption that the analysis in *Atlantic Coast Line* is

somehow inconsistent with the analytical approach the Supreme Court later adopted in analyzing LIA, it is the Supreme Court's prerogative to reconcile the two inconsistent lines of precedent. The Supreme Court has made clear that if one of its precedents "has direct application in a case, yet appears to rest on reasons rejected in some other line of decisions, the Court of Appeals should follow the case which directly controls, leaving to this Court the prerogative of overruling its own decisions." *Agostini v. Felton*, 521 U.S. 203, 237 (1997) (quotation and citation omitted).

Because *Atlantic Coast Line* is directly on point and specifically holds that SAA does not preempt state common-law suits involving railcar safety as long as the suit does not relate to one of the listed devices, it resolves this issue. Little's state-law claims relate to asbestos-wrapped pipes, a matter not regulated by SAA. Those claims, therefore, are not preempted by SAA.

## IV. CONCLUSION

For those reasons set out above, the judgment in favor of Little entered by the United States District Court for the District of Kansas is hereby **AFFIRMED**.