FILED
United States Court of Appeals
Tenth Circuit

August 9, 2016

Elisabeth A. Shumaker
Clerk of Court

PUBLISH

UNITED STATES COURT OF APPEALS

TENET CIRCUIT

---

THOMAS P. CULVER,

      Plaintiff-Appellant,

v.

SHANNON ARMSTRONG,
in his individual capacity;
BILL BRENNER,
in his official capacity,

      Defendants-Appellees.

No. 15-8028

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF WYOMING
(D.C. No. 1:14-CV-00012-ABJ)

---

Philip E. Abromats, Philip E. Abromats, P.C., Greybull, Wyoming, for Plaintiff-Appellant.

Jeremy Gross, Assistant Attorney General (Peter K. Michael, Attorney General, and John D. Rossetti, Deputy Attorney General, with him on the brief), Cheyenne, Wyoming, for Defendant-Appellee Shannon Armstrong.

Richard Rideout, Law Offices of Richard Rideout, PC, Cheyenne, Wyoming, for Defendant-Appellee Bill Brenner.

---

Before **HARTZ**, **BALDOCK**, and **McHUGH**, Circuit Judges.

---

**BALDOCK**, Circuit Judge.

---

Plaintiff Thomas Culver claims Defendant Shannon Armstrong, while a sergeant with the Greybull, Wyoming police force, arrested him in violation of the Fourth Amendment. On Defendant's motion for summary judgment, the district court held probable cause supported Plaintiff's arrest and granted Defendant qualified immunity. Plaintiff appeals. Our jurisdiction arises under 28 U.S.C. § 1291. We too reject Plaintiff's claim and affirm the district court's grant of qualified immunity to Defendant, albeit under the immunity analysis' second rather than first inquiry.[1] See Stan Lee Media, Inc. v. Walt Disney Co., 774 F.3d 1292, 1296 (10th Cir. 2014) (recognizing the court's authority to "affirm on any ground supported by the record").

I.

One cannot on the record before us reasonably dispute the *material* facts of the encounter between Plaintiff and Defendant. Greybull has a population of around 2,000 inhabitants. The "Maverick Country Store" is located on North 6th Street in Greybull. The dash camera on Defendant's patrol car reveals that shortly after 2:26 a.m. on Saturday, April 6, 2013, a white Chevrolet pickup deactivated its headlights before moving left off the public thoroughfare and over the sidewalk adjacent to a

---

[1] Because he has not raised them on appeal, Plaintiff has waived any derivative claims of failure to train and supervise that he raised—and necessarily lost—in the district court against Defendant Bill Brenner, Greybull Chief of Police. See Davis v. Unified Sch. Dist. 500, 750 F.3d 1168, 1170 n.1 (10th Cir. 2014) (issues not raised in an opening brief are waived). Accordingly, Plaintiff's motion to strike the brief of Defendant Brenner is denied as moot.

delivery area at the back of the store. Defendant was standing along side his patrol car conversing with Dusti Mowrey, a local resident and, by happenstance, a friend of Plaintiff, when he witnessed the Chevrolet pickup with two individuals inside approach the store without headlights and then disappear behind the store.[2] After checking to make certain the pickup had not stopped, Defendant returned to his vehicle. The dash camera indicates Defendant activated his flashing lights at 2:27:06 a.m. and proceeded south on 6th Street in pursuit of the pickup. Mowrey, who acknowledged she had been drinking that night, described the scene in her deposition: "I believe—well, it was Red's [Plaintiff's] truck—I don't know who was driving—but came through, like, to the left of the Maverick, kind of going a little fast. And that's the last I seen of them, and then I seen the cop go and I followed." Aplt's App. at 297.

Defendant's police report states he observed the pickup drive over the sidewalk behind the store and seconds later exit the alley running along the south side of the store. Turning right and heading south on 6th Street, the pickup turned left or east on 4th Avenue, followed at a distance by Defendant's patrol car. The pickup was approximately three blocks ahead of the patrol car when it turned right

---

[2] Plaintiff, who long after the fact stated he was driving the pickup, indicated at his deposition the pickup's headlights were on while it was moving behind the store. Aplt's App. at 99. The dash camera video, however, clearly discredits Plaintiff's statement. See Scott v. Harris, 550 U.S. 372, 380 (2007) (rejecting plaintiff's version of events in the summary judgment context where clearly contradicted by a videotape).

or south on North 3rd Street. Plaintiff does not contest the path taken by either of the two vehicles to this point, although he disclaims any knowledge that Defendant was in pursuit of his pickup. According to Defendant's police report:

> I [next] turned South onto N 3rd St and continued South for approximately one half (½) block. As I approached the alley between 4th Ave N and 3rd Ave N, I observed a vehicle about halfway down the alley. The red taillights on the vehicle immediately went out . . . . I turned my patrol vehicle West into the alley. At this time the brake lights came on and the vehicle drove out of the alley and turned North onto N 4th St. As I exited the alley, I observed the white Chevrolet stop . . . .

Aplt's App. at 262. The dash camera video is entirely consistent with Defendant's report of his vehicle's movement, although the last we see of the moving pickup on the video is its right turn onto North 3rd St.[3]

Shortly after 2:28 a.m., Defendant pulled toward the curb directly in front of the pickup and exited his patrol car. Seconds later, Defendant located William Reed, whom he believed to be the driver of the pickup, standing a few feet away in the shadows of the nearest house. By this time, Defendant's body camera video had

---

[3] Plaintiff tells a slightly different story of how his pickup arrived curbside on North 4th Street between 3rd and 4th Avenues. After turning right on 3rd Street, the pickup passed the alley, proceeding south to 3rd Avenue where it turned right or west. At North 4th Street, the pickup turned right once more, again passing the alley before coming to a stop near the intersection with 4th Avenue. See Aplt's App. at 122–23. According to Plaintiff, the pickup stopped "right there in front of a buddy of mine's house," a buddy whose name Plaintiff could not recall. Id. at 100. In any event, the precise path the pickup took to its resting point is immaterial. No one can reasonably dispute on the present record that Defendant was in pursuit of Plaintiff's pickup until it stopped along North 4th Street. See id. at 98 (Plaintiff acknowledging that Defendant "chased us down and pulled us over").

4

activated. Defendant repeatedly asked Reed: "Where's the other guy that was in the pickup with you?" Reed was evasive, asking Defendant: "What guy? Why you chasing us?" After Reed admitted he had been drinking, Defendant instructed Reed to sit on the front end of the squad car with his hands on the hood.

While Defendant was conducting his investigation, Plaintiff appeared out of the dark, walking north on the sidewalk a few feet east of the patrol car. The time was 2:31:50 a.m. Plaintiff turned toward Defendant, approached the curb, stopped and asked: "What's going on?" His attention diverted from Reed, Defendant asked Plaintiff: "Where did you come from? Were you in the white pickup?" Plaintiff responded: "Why?" Defendant twice asked Plaintiff: "Yes or no?" Both times Defendant defiantly responded: "Why?" Defendant then twice told Plaintiff: "Put your butt on my car." Again Defendant twice responded: "Why?" The increasingly tense exchange continued with Plaintiff telling Defendant: "I was just walking by man, leave me the fuck alone." Defendant instructed Plaintiff: "If this doesn't concern you, then keep walking." But Plaintiff did not keep walking. Instead, Plaintiff walked a few steps to the street corner, stopped, and again directed his attention toward Defendant: "I just wanna know what the hell is going on?" Defendant again asked Plaintiff: "Does this concern you? Were you inside that white pickup?" And Plaintiff again responded: "Why?" At this point, Defendant's patience had worn thin. Defendant told Plaintiff: "Come here."

At 2:32:15 a.m., Mowrey, the curious motorist who had been speaking with Defendant at the Maverick store, pulled to the curb facing west on 4th Avenue across the street from Plaintiff. Plaintiff slowly began to walk east along 4th Avenue. Defendant walked toward Plaintiff, instructing him: "Let me see your ID. Stop, stop, stop, stop or I'll tase you!" As Plaintiff turned to cross 4th Avenue, he stopped, held up his hands and yelled: "I'm not fuckin' doin' nothin'!"

Defendant: Walk back over there or you're gonna get tased!
Plaintiff: Why?
Defendant: Walk over there!
Plaintiff: Leave me the fuck alone!
Defendant: Walk over there!
Plaintiff What is your problem man?
Defendant: Sir, walk over to my car.
Plaintiff: Why?
Defendant: Get over to my car.
Plaintiff: All I'm doin' is checkin' on my friend.

Plaintiff identified Mowrey as his friend and approached her vehicle, all the while ignoring Defendant's repeated commands to "come here." By this time, Defendant was far afield from Reed and the pickup and very near Plaintiff. Plaintiff asked Mowrey: "Why's this dude chasing me like a retard? Mowrey responded: "You were kinda acting like a retard." Seconds later, at approximately 2:33 a.m., Defendant seized Plaintiff:

Defendant: Let's go. C'mon, c'mon. You're gonna get tased!
Plaintiff: Don't touch me!
Defendant: Walk ov–
Plaintiff: I will!
Defendant: Now! Walk over to my car or you're gonna get tased. Now! Move!

6

Plaintiff:     I'm walking.
Defendant:   Move!

Plaintiff continued to verbally joust with Defendant. Finally, at 2:34:47 a.m. Defendant had enough. He read Plaintiff his rights, placed him under arrest, and sat him in the back of the patrol car. In the end, Defendant issued Plaintiff a citation for public intoxication and transported him to the county jail. A local magistrate ultimately dismissed the charge against Plaintiff.

## II.

Thereafter Plaintiff sued Defendant for unlawful arrest pursuant to 42 U.S.C. § 1983. Defendant moved for summary judgment based on qualified immunity. Recognizing that to comport with the Fourth Amendment a warrantless arrest must be supported by probable cause, see Devenpeck v. Alford, 543 U.S. 146, 152 (2004), the district court ruled Defendant did not unlawfully arrest Plaintiff because the material facts as shown on the dash and body camera videos established probable cause to arrest him both for public intoxication in violation of a local ordinance and interference with a police officer in violation of a state statute: "As events unfolded, [Defendant] Armstrong could have arrested [Plaintiff] Culver for obstruction or interference; he could have arrested Culver for public intoxication. Culver's obstreperous and obnoxious conduct, his refusals to obey Armstrong would all reasonably support a conclusion that Culver committed any of these offenses." Culver v. Armstrong, No. 14-CV-12-ABJ, Order at 36 (D. Wyo., filed May 1, 2015)

7

(unpublished). We review de novo the district court's grant of qualified immunity to Defendant in the context of summary judgment. Stonecipher v. Valles, 759 F.3d 1134, 1141 (10th Cir. 2014).

For our purpose, "[t]he doctrine of qualified immunity shields officials from civil liability so long as their conduct does not violate clearly established . . . constitutional rights of which a reasonable person would have known." Mullenix v. Luna, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotations omitted). "[A] motion [for summary judgment] based on a claim of qualified immunity imposes the burden on the plaintiff to show both [1] that a constitutional violation occurred and [2] that the constitutional right was clearly established at the time of the alleged violation." Lynch v. Barrett, 703 F.3d 1153, 1158 (10th Cir. 2013) (internal quotations omitted). "[W]e are permitted to exercise our sound discretion in deciding whether to bypass the first question and proceed directly to the second." Id. at 1159 (citing Pearson v. Callahan, 555 U.S. 223, 236–43 (2009)). In this case, we exercise our discretion and proceed directly to the qualified immunity standard's second inquiry. We need not go so far as the district court and decide (1) whether Defendant had probable cause to arrest Plaintiff, *i.e.*, whether a constitutional violation occurred. Rather, we need only decide (2) whether an officer in the situation Defendant confronted could have reasonably believed he had probable cause to arrest Plaintiff, *i.e.*, whether the constitutional right was clearly established in the factual context of this case.

8

> [W]e ascertain whether a defendant violated clearly established law by asking whether there was 'arguable probable cause' for the challenged conduct. Arguable probable cause is another way of saying that the officers' conclusions rest on an *objectively reasonable*, even if mistaken, belief that probable cause exists. A defendant is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff.

Stonecipher, 759 F.3d at 1141 (emphasis added) (citations and quotations omitted).

Plaintiff seriously misunderstands the nature of our qualified immunity inquiry. He tells us the law was clearly established at the time of his encounter with Defendant because a warrantless arrest absent probable cause has been unlawful from time immemorial: "That an arrest must be based only upon probable cause has common-law origins that predate our American republic's founding." Aplt's Reply Br. at 10. Plaintiff's argument, however, is plainly insufficient to carry his burden. The long-established principle that warrantless arrests unsupported by probable cause violate the Fourth Amendment does not inevitably require us to conclude that Defendant's arrest of Plaintiff was objectively unreasonable. Simply to say the law has long recognized one's right to be free from arrest absent probable cause casts way too high a level of generality over our inquiry. See Mullinex, 136 S. Ct. at 308. Rather—

> [t]he dispositive question is whether the violative nature of *particular* conduct is clearly established. This inquiry must be undertaken in light of the specific context of the case, not as a broad general proposition. Such specificity is especially important in the Fourth Amendment context, where . . . it is sometimes difficult for an officer to determine how the relevant legal doctrine . . . will apply to the factual situation the officer confront[ed].

9

Id. (emphasis in original) (internal brackets, citations, and quotations omitted).

Therefore, to withstand Defendant's qualified immunity defense, Plaintiff must illustrate that the unlawfulness of Defendant's conduct was clearly established or apparent "in the light of pre-existing law." Hope v. Pelzer, 536 U.S. 730, 739 (2002). And, of course, the lawfulness of an arrest turns on the presence or absence of probable cause, defined in terms of facts and circumstances "sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing a[] [criminal] offense." Beck v. Ohio, 379 U.S. 89, 91 (1964). That Defendant cited Plaintiff for public intoxication alone is inconsequential. We measure probable cause against an objective standard. That an officer may not have subjectively believed probable cause existed to arrest a suspect for a certain crime does not preclude the Government from justifying the suspect's arrest based on any crime an officer could objectively and reasonably have believed the suspect committed. See Devenpeck, 543 U.S. at 153.

To answer the probable cause inquiry posed by the "clearly established" prong of the qualified immunity standard in this case, we need look no further than Wyoming Supreme Court cases construing Wyo. Stat. Ann. § 6-5-204(a). See Mocek v. City of Albuquerque, 813 F.3d 912, 924–27 (10th Cir. 2015) (analyzing in the context of a § 1983 lawsuit for unlawful arrest whether state law clearly established that one's refusal to provide identification constituted the offense of concealing one's name or identity). Section 6-5-204(a) provides in relevant part that a person

10

is guilty of interference with a peace officer "if he knowingly obstructs, impedes or interferes with . . . a peace officer while engaged in the lawful performance of his official duties."[4]  In Tillett v. State, 637 P.2d 261, 264 (Wyo. 1981), the Wyoming Supreme Court opined that while "mere remonstrances or criticisms" will not satisfy a charge of interference under the statute, "*verbal abuse alone may become sufficient to constitute the crime where its intensity, or the totality of several acts is such as to amount to an interference with an officer in the performance of his duty.*"  (emphasis added).  Subsequently, in Newton v. State, 698 P.2d 1149, 1150 (Wyo. 1985), the Wyoming Supreme Court reaffirmed its prior construction of § 6-5-204(a):  "There are a *number of ways* in which one may impede, obstruct or interfere with an officer in the performance of his duties without the use of actual force. . . .  *Speech can amount to impediment, obstruction or interference with a law enforcement officer*." (emphasis added).  The court later reiterated its point:  "[A] peace officer may be obstructed, interfered with or impeded in the lawful performance of his official duties in violation of § 6-5-204(a) by *speech, passive or otherwise . . . .* "  Id. at 1151 (emphasis added).

In view of Tillett's and Newton's interpretation of § 6-5-204(a) suggesting that speech alone *may* rise to the level of interference with a police officer in the

---

[4]  No question as to § 6-5-204(a)'s constitutionality is before us.  And "[a]t any rate, the validity of the statute is hardly relevant to the probable cause determination because officers generally may presume that statutes are constitutional until declared otherwise."  Mocek, 813 F.3d at 927–28.

11

performance of his official duty, we hold Defendant could have held an objectively reasonable belief that Plaintiff was interfering with his investigative detention of Reed in violation of Wyoming law. Defendant was in the act of lawfully questioning Reed on a dark side street in the middle of the night, when Plaintiff, appearing from the shadows, verbally interjected himself into the ongoing police investigation.[5] Plaintiff approached Defendant and asked him what was "going on." But despite his curiosity, Plaintiff refused to cooperate with Defendant. Instead, Plaintiff diverted Defendant's attention away from Reed and repeatedly responded "why" to Defendant's legitimate questions concerning the whereabouts of the second suspect. Even after Plaintiff told Defendant to "leave me the fuck alone," Defendant gave him the opportunity to cease interfering and remove himself from the scene. Defendant told Plaintiff: "If this doesn't concern you, then keep walking." But Plaintiff persisted, continuing to antagonize Defendant and drawing him still further away

---

[5] Unquestionably, Defendant was in the lawful performance of his duty at the time of his encounter with Plaintiff. The dash camera video of the pickup near the Maverick store at 2:30 a.m and Defendant's ensuing pursuit of the vehicle justified Defendant's stop of the pickup and detention of Reed based on reasonable suspicion of reckless driving, driving under the influence, and eluding. See Wyo. Stat. Ann. §§ 31-5-229, 31-5-233, 31-5-225 (addressing reckless driving, DUI, and eluding respectively). That Plaintiff rather than Reed may have been the driver of the pickup is inconsequential. A police officer's mistake of fact may support reasonable suspicion provided the mistake of fact was objectively reasonable. United States v. Karam, 496 F.3d 1157, 1164 (10th Cir. 2007). Here, the encounter occurred at nighttime. Defendant was never close enough to the pickup at the Maverick store or during his pursuit to plainly see which of the two suspects was in the driver's seat prior to their flight on foot.

from Reed and his initial investigation to the point where Reed could have easily fled or even assaulted Defendant from behind. Fortunately, Reed did neither.

The facts of this case, when considered together with the Wyoming Supreme Court's construction of Wyo. Stat. Ann. § 6-5-204(a) in Tillett and Newton, arguably were sufficient to warrant a prudent officer in believing Plaintiff had committed or was committing the criminal offense of "interfer[ing] with . . . a peace officer while engaged in the lawful performance of his official duties" in violation of Wyoming law. And this means that at the time of his encounter with Defendant, the law was not clearly established in Plaintiff's favor, such that a reasonable officer would have known that seizing Plaintiff was against the law. Accordingly, Defendant is entitled to qualified immunity. The judgment of the district court is—

AFFIRMED.