**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 11, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

THOMAS ASPREY; LESLIE
GLUSTROM,

     Plaintiffs - Appellants,

v.

NORTHERN WYOMING COMMUNITY
COLLEGE DISTRICT; LIEUTENANT
CHAD TREBBY, in his official and
individual capacities,

     Defendants - Appellees,

and

PEABODY ENERGY CORPORATION,

     Defendant.

No. 19-8056
(D.C. No. 1:15-CV-00063-SWS)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **BRISCOE**, **MATHESON**, and **CARSON**, Circuit Judges.
_____

---

[*] After examining the briefs and appellate record, this panel has determined unanimously that oral argument would not materially assist in the determination of this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore ordered submitted without oral argument. This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

This case stems from Defendant Chad Trebby's decision to arrest Plaintiffs Thomas Asprey and Leslie Glustrom. Just before their arrest, Plaintiffs had been protesting at Peabody Energy Corporation's annual meeting of shareholders. When they defied Trebby's order to confine their protest activity to a designated area and instead unfurled a bedsheet painted with the words "PEABODY ABANDONS MINERS" across a travel lane in a parking lot, he arrested them. Plaintiffs then sued under 42 U.S.C. § 1983, alleging that Trebby's arrest violated their First and Fourth Amendment rights. The district court granted summary judgment to Trebby and his employer, the Northern Wyoming Community College District (NWCCD). Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

NWCCD operates its own police department and employed Trebby as a law enforcement officer. Peabody operates coal mines. It rented space at NWCCD's Gillette College to hold its annual meeting. Before the meeting, Peabody alerted Trebby to the prospect that anti-Peabody/anti-coal protesters would likely show up.

Trebby met with Gillette College's CEO and NWCCD's police chief to develop a plan for ensuring that any protests would not interfere with campus operations or student learning. They decided to erect a protest zone in an area designated for that purpose by the student handbook. "Because of very strong local opposition that surfaced the last time there was an effort to protest coal production in the Gillette area," they decided to establish a second protest zone "equal distance from the main doors [of the building where Peabody would hold its meeting] as the

2

first area." Aplt. App. Vol. 2 at 272. They did this to enable "the opposing sides to exercise their views" while "minimizing confrontation between the two groups." *Id.* They assigned the anti-Peabody/anti-coal group to the protest area closest to the west entrance of the main parking lot. Trebby stated in his affidavit that "[m]ost people coming to campus drive down 4J Road" and enter via the west entrance. *Id.* at 318. According to him, that entrance "receives notably more traffic than other parts of campus," *id.*, and the anti-Peabody/anti-coal zone was "more visible . . . to people driving down 4J Road to the college" than the pro-Peabody/pro-coal zone, *id.* at 319.

Just before the meeting, Plaintiff Glustrom and other anti-Peabody protesters met with NWCCD police, who told them about the protest zones. Around this time, Plaintiff Asprey "talked to some miners . . . [and] told them why [he] was there." *Id.* Vol. 3 at 450.

Plaintiffs then attended the meeting as proxies for Peabody shareholders. They sat in an overflow room with some miners and other proxy holders. Plaintiff Asprey submitted a written question that a Peabody executive read aloud in the primary meeting space.

After the meeting, Plaintiffs displayed their painted bedsheet banner outside of the designated zone and near the front doors of the college. Trebby informed them "that they were welcome to stay on campus . . . but that they needed to contain their protest activities to the designated area." *Id.* Vol. 2 at 273. Plaintiffs complied and started walking toward the protest zone. But they "began to separate and again display the banner as they were walking down a primary driving lane of the parking

3

lot." *Id.* at 274. Trebby again "informed them that they needed to refrain from engaging in such behavior until they reached the designated area[] and . . . asked them to hold the banner down until they reached the designated area." *Id.*

Plaintiffs only protested in the anti-Peabody zone for "[a] minute or two." *Id.* Vol. 3 at 441. After this, they folded up their banner and began walking back across the parking lot to their car to go home. They "knew then Officer Trebby didn't want [them] to show [the banner]." *Id.* at 453. But Plaintiffs encountered a group of like-minded miners and elected to unfurl the banner across one of the travel lanes of the parking lot to take a picture with them.

Trebby then arrested Plaintiffs and cited them for trespassing in violation of Wyo. Stat. Ann. § 6-3-303. A Wyoming judge dismissed the charges, finding that Trebby lacked probable cause to arrest Plaintiffs for trespass.

Plaintiffs later brought this suit under 42 U.S.C. § 1983. As relevant here, they alleged Trebby violated their Fourth Amendment rights by arresting them without probable cause and their First Amendment rights by arresting them in retaliation for exercising their rights to free speech. And they sought damages from NWCCD as Trebby's employer under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The district court granted summary judgment to Trebby and NWCCD. It applied the doctrine of qualified immunity and rejected Plaintiffs' Fourth Amendment claims because, among other things, Trebby had probable cause to arrest them for interfering with the performance of his duties in violation of Wyo. Stat. Ann. § 6-5-204(a). It also applied the doctrine of qualified immunity to reject Plaintiffs' First Amendment claims,

4

reasoning that "at the time of Plaintiffs' arrest, it was not clearly established that an arrest supported by arguable probable cause could violate the First Amendment." Aplt. App. Vol. 3 at 649. And it concluded that "[t]he lack of a constitutional violation by . . . Trebby means . . . NWCCD cannot be liable to Plaintiffs under § 1983." *Id.* at 651 (boldface and underline omitted).

## II. Discussion

### A. Burden of Proof and Standard of Review

"[P]ublic officials enjoy qualified immunity in civil actions that are brought against them in their individual capacities and that arise out of the performance of their duties." *Pahls v. Thomas*, 718 F.3d 1210, 1227 (10th Cir. 2013). Where, as here, "a defendant asserts a qualified immunity defense, the plaintiff carries a two-part burden to show: (1) that the defendant's actions violated a federal constitutional or statutory right, and, if so, (2) that the right was clearly established at the time of the defendant's unlawful conduct." *Donahue v. Wihongi*, 948 F.3d 1177, 1186 (10th Cir. 2020) (internal quotation marks omitted). "If, and only if, the plaintiff meets this two-part test does a defendant then bear the traditional burden of the movant for summary judgment—showing that there are no genuine issues of material fact and that he or she is entitled to judgment as a matter of law." *Koch v. City of Del City*, 660 F.3d 1228, 1238 (10th Cir. 2011) (internal quotation marks omitted).

"We review de novo the district court's grant of qualified immunity to [a] [d]efendant in the context of summary judgment." *Culver v. Armstrong*,

5

832 F.3d 1213, 1217 (10th Cir. 2016). "In determining whether the plaintiff has met its burden of establishing a constitutional violation that was clearly established, we will construe the facts in the light most favorable to the plaintiff as the nonmoving party." *Thomson v. Salt Lake Cty.*, 584 F.3d 1304, 1312 (10th Cir. 2009).

## B. Fourth Amendment Claims

Plaintiffs contend Trebby violated their Fourth Amendment rights by arresting them without probable cause. "A warrantless arrest violates the Fourth Amendment unless probable cause exists to believe a crime has been or is being committed." *Corona v. Aguilar*, 959 F.3d 1278, 1282 (10th Cir. 2020). But "when an officer has probable cause to believe a person committed even a minor crime in his presence . . . [t]he arrest is constitutionally reasonable." *Virginia v. Moore*, 553 U.S. 164, 171 (2008).

"Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense." *Corona*, 959 F.3d at 1282 (internal quotation marks omitted). "[P]robable cause 'is not a high bar.'" *Hinkle v. Beckham Cty. Bd. of Cty. Comm'rs*, 962 F.3d 1204, 1220 (10th Cir. 2020) (quoting *Kaley v. United States*, 571 U.S. 320, 338 (2014)). "Officers need 'only the kind of fair probability on which reasonable and prudent people, not legal technicians, act.'" *Id.* (quoting *Kaley*, 571 U.S. at 338). "An officer's subjective state of mind is irrelevant to the probable-cause calculus because the crux of the inquiry is whether 'the circumstances, viewed objectively, justify the arrest.'" *Id.* (alterations omitted) (quoting *Devenpeck v. Alford*, 543 U.S. 146, 153 (2004)).

6

The district court found Trebby had probable cause to arrest Plaintiffs for violating Wyo. Stat. Ann. § 6-5-204(a).[1] A person violates the statute if he or she "knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties." Wyo. Stat. Ann. § 6-5-204(a). Interference includes anything "which hinders or prevents or tends to prevent the performance of [an officer's] legal duties." *Garza v. State*, 458 P.3d 1239, 1242 (Wyo. 2020) (internal quotation marks omitted). "The statute was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." *Id.* (alterations and internal quotation marks omitted).

## 1. Plaintiffs Interfered with Trebby

The district court concluded that "[t]he law and common sense dictate that knowingly failing or refusing to follow an officer's lawful order or directive readily amounts to impeding or interfering with the officer's performance of his or her duties" in

---

[1] The district court found it did not matter that a Wyoming judge subsequently ruled Trebby lacked probable cause to arrest Plaintiffs for trespassing in violation of Wyo. Stat. Ann. § 6-3-303 because probable cause is measured "'against an objective standard'" and the government can justify an "'arrest based on any crime an officer could objectively and reasonably have believed the suspect committed.'" Aplt. App. Vol. 3 at 638 (quoting *Culver*, 832 F.3d at 1218). One of Plaintiffs' three issues on appeal asks us to consider "[w]hether the district court erred by not collaterally estopping . . . Trebby from arguing probable cause existed to arrest [them]." Aplt. Opening Br. at 1. But other than listing this as an issue presented for review, Plaintiffs fail to develop any collateral estoppel argument in their opening brief and we therefore decline to consider this argument. *See, e.g.*, *Armstrong v. Arcanum Grp., Inc.*, 897 F.3d 1283, 1291 (10th Cir. 2018) ("The court will not consider issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation." (ellipsis and internal quotation marks omitted)).

violation of Wyo. Stat. Ann. § 6-5-204(a). Aplt. App. Vol. 3 at 639 (citing *CG v. State*, 248 P.3d 186, 187–90 (Wyo. 2011); *Newton v. State*, 698 P.2d 1149, 1150 n.2 (Wyo. 1985)). Plaintiffs do not argue the district court erred in reaching this conclusion of law.[2]

The district court then found that Trebby had probable cause to arrest Plaintiffs for violating Wyo. Stat. Ann. § 6-5-204(a) because "probable cause existed to believe Plaintiffs knowingly refused or ignored . . . Trebby's directive to refrain from unfurling the banner in the parking lot." Aplt. App. Vol. 3 at 640. Plaintiffs argue that because they put away their banner each time Trebby asked them to, they did not violate his command and therefore did not interfere with any of his duties. But Plaintiffs' argument misconstrues the facts. Trebby did not merely order them to put the banner away. He also ordered them to refrain from unfurling the banner outside of the protest zone in the future. As Plaintiff Asprey testified: "we knew then [as Plaintiffs started walking through the parking lot after Trebby had issued his directive] Officer Trebby didn't want us to

---

[2] Plaintiffs do not address this conclusion or the cases cited by the district court in their opening brief. "[T]he omission of an issue in an opening brief generally forfeits appellate consideration of that issue." *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007). In their reply brief, Plaintiffs likewise do not address the district court's holding. But they argue therein that the "statute does not mention, or contemplate, that failing to obey an order of an officer is a crime," and attempt to distinguish the Wyoming cases cited by the district court. Aplt. Reply Br. at 8. "[W]e will not entertain issues raised for the first time on appeal in an appellant's reply brief." *Platt v. Winnebago Indus., Inc.*, 960 F.3d 1264, 1271 (10th Cir. 2020) (internal quotation marks omitted). We note, however, that Plaintiffs concede the Wyoming cases cited by the district court "involved interfering in some way (be that with investigation of a crime or otherwise) with an officer's performance of his duties by the failure to obey a lawful order." Aplt. Reply Br. at 8.

show [the banner]." *Id.* at 453; *see also* Aplt. Opening Br. at 5 (conceding Trebby told Plaintiffs "they could not display their banner outside of the free speech zone"). The evidence demonstrates that Plaintiffs disobeyed Trebby's order.

## 2. Plaintiffs Interfered "Knowingly"

Plaintiffs next argue that a reasonable officer would not have had probable cause to believe that they were "knowingly" interfering with Trebby's duties. But Trebby ordered them to refrain from unfurling their banner outside of the protest zone, *see* Aplt. App. Vol. 2 at 273–74, and later "saw them . . . holding [the banner] . . . and blocking the parking lot," *id.* Vol. 3 at 587. "[W]e judge probable cause to arrest by what facts the officer knew at arrest." *Hinkle*, 962 F.3d at 1221. Based on what Trebby knew at the time, a reasonable officer in his shoes would have believed Plaintiffs knew they were violating his directive.

## 3. Trebby's Order Was Lawful

Plaintiffs further argue that Trebby's order could not have been issued "in the *lawful* performance of his official duties," Wyo. Stat. Ann. § 6-5-204(a) (emphasis added), because the order violated their First Amendment rights. *See* Aplt. Opening Br. at 33.

The district court rejected this argument, finding that "Trebby's order was within the 'lawful performance of his duties.'" Aplt. App. Vol. 3 at 642. The court explained:

> "[E]ven in a public forum the government may impose reasonable restrictions on the time, place, or manner of protected speech, provided the restrictions are justified without reference to the content of the regulated speech, that they are narrowly tailored to serve a significant governmental

9

> interest, and that they leave open ample alternative channels for communication of the information."

*Id.* at 642–43 (quoting *McCullen v. Coakley*, 573 U.S. 464, 477 (2014)). And the court concluded the record contained "no evidence . . . establishing . . . Trebby's directive to Plaintiffs to refrain from displaying their banner in the parking lot was an unconstitutional time-place-manner restriction." *Id.* at 642.

Plaintiffs cite no evidence that undermines the district court's analysis. Plaintiffs do argue that "[t]he [f]ree [s]peech zones in this case were not content neutral" because the "'pro-Peabody' zone was much closer to the intended audience" than the "'anti-Peabody' zone." Aplt. Opening Br. at 20 n.5. But the evidence does not support this contention. The testimony Plaintiffs cite does not discuss the relative position of the two zones. *See* Aplt. App. Vol. 3 at 453. And Trebby's unrebutted testimony establishes that the two zones sat "equal distance from the main doors" of the college. *Id.* Vol. 2 at 272. What's more, Plaintiffs do not dispute Trebby's testimony that he positioned the anti-Peabody/anti-coal zone closer to the campus entrance that "receives notably more traffic than other parts of campus" and the road "[m]ost people coming to campus drive down." *Id.* at 318.

Plaintiffs also that contend that "[f]rom the free speech zone, [they] could not reach their intended audience." Aplt. Opening Br. at 6. But Plaintiffs do not articulate an argument or cite any evidence supporting a finding that Trebby's order either (1) was not "narrowly tailored to serve a significant governmental interest," *McCullen*, 573 U.S. at 477 (internal quotation marks omitted), or (2) did not "leave open ample alternative

10

channels for communication of the information," *id.* (internal quotation marks omitted).

Indeed, Plaintiffs do not challenge the district court's conclusion that "[t]he evidence shows . . . Trebby directed Plaintiffs out of the parking lot [to display their banner] pursuant to a legitimate concern with traffic." Aplt. App. Vol. 3 at 643. And while Plaintiffs complain that Trebby positioned the anti-Peabody zone "out of a clear line of sight from the entrance to the shareholders meeting, which was the intended main focal point of [Plaintiffs'] advocacy," Aplt. Opening Br. at 6, they do not challenge Trebby's testimony that the anti-Peabody zone sat "within plain view of everyone coming or leaving the campus," Aplt. App. Vol. 3 at 495.

Plaintiffs further do not identify an audience they were, in fact, unable to reach that day. Plaintiff Asprey testified that his purpose on campus was to "let the miners know that somebody cared about them," *id.* at 448, and that he "talked to some miners . . . [and] told them why [he] was there," *id.* at 450. Both Plaintiffs attended the meeting of shareholders without interference from Trebby or any other NWCCD employee. And Plaintiff Asprey even had his question read aloud by a Peabody executive at the meeting.

Given the evidence, we do not agree that Trebby's order was unlawful.[3]

---

[3] Plaintiffs also argue that NWCCD's decision to implement the protest zones violated their First Amendment rights. But we need not decide whether that decision passes constitutional muster because Plaintiffs did not challenge it in their complaint. It is enough for us to conclude that Plaintiffs have not shown Trebby's directive violated their constitutional rights.

11

### 4. It Does Not Matter That No Law Barred Plaintiffs' Acts

Plaintiffs finally note that "no law" prohibited them from displaying their banner. Yet section 6-5-204(a) "was made purposefully broad to cover actions which might not be otherwise unlawful, but which obstructed or hindered law enforcement officers in carrying out their duties." *Garza*, 458 P.3d at 1242 (internal quotation marks omitted).

We conclude that "[u]nder the totality of the circumstances, a prudent, reasonable, and cautious police officer in . . . Trebby's position would reasonably and objectively believe Plaintiffs were committing the crime of misdemeanor interference within his presence when they chose to ignore his prior directives and unfurled the banner in the parking lot anyway." Aplt. App. Vol. 3 at 643.

## C. First Amendment Claims

"[A] First Amendment retaliation claim based on a false arrest requires a . . . 'threshold showing'—generally, a plaintiff must show a false arrest." *Hinkle*, 962 F.3d at 1227.[4] Because we conclude that Trebby had probable cause to arrest Plaintiffs, their First Amendment retaliatory-arrest claims fail. *See id.* !

## D. *Monell* Claims

NWCCD is a "person" subject to § 1983 liability. *See Monell*, 436 U.S. at 690. Under § 1983, a government entity "may not be held liable where there was no underlying constitutional violation by any of its officers." *Donahue*, 948 F.3d at 1199

---

[4] This rule is subject to "a narrow exception—that probable cause will not defeat a retaliatory-arrest claim if the plaintiff could show that officers would usually not arrest under similar circumstances." *Hinkle*, 962 F.3d at 1227. Plaintiffs do not argue that this narrow exception applies.

12

(internal quotation marks omitted).  "Without an underlying constitutional violation" by Trebby, NWCCD "cannot be liable."  *Id.*

### III.  Conclusion

We affirm the district court's grant of summary judgment to Trebby and NWCCD.

Entered for the Court


Mary Beck Briscoe
Circuit Judge