**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**October 5, 2020**

**Christopher M. Wolpert**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

ROBERT G. MOYA,

     Plaintiff - Appellant,

v.

CITY OF CLOVIS; BRENT AGUILAR,
officer, in his individual capacity and as an
employee of the City of Clovis; JAMES
GURULE, Sergeant, in his individual
capacity and as an employee of the City of
Clovis,

     Defendants - Appellees.

No. 20-2001
(D.C. No. 2:18-CV-00494-GBW-KRS)
(D. N.M.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **HARTZ**, **McHUGH**, and **EID**, Circuit Judges.
_____

    Robert Moya filed this case to recover damages for injuries inflicted by a

police dog after he attempted to evade arrest. He appeals from the district court's

grant of summary judgment to Defendants Brent Aguilar, James Gurule, and the City

_____

    [*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

of Clovis, New Mexico, on his 42 U.S.C. § 1983 claims. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. Background

Before the events giving rise to this case, Moya engaged police in what he described as "[a] lot of cat-and-mouse chase[s]." R. at 153. Moya testified that "[a] lot of times [he] was able to get away," *id.*, but police also arrested him "[m]any, many times," *id.* at 152.

On May 29, 2015, Clovis Police Department Detective Adriana Munoz spotted Moya. Munoz recognized Moya from prior encounters and checked to see if he had any outstanding warrants. After learning that he did, Munoz turned her car around and activated her emergency equipment. Moya fled.

Munoz pursued Moya on foot. Defendants Gurule and Aguilar joined Munoz in her pursuit. Aguilar brought his police dog, Leo, with him. They found Moya standing on top of a shed in a backyard. Moya recalls Aguilar saying "'[s]top or I'm gonna release the dog. Get off of the shed and just surrender.'" *Id.* at 158.

Moya jumped down from the shed and took off running. Aguilar then released Leo. Moya sprinted across the yard with Leo hot on his heels and Aguilar trailing in pursuit. Moya reached the house next door and began scrambling onto the roof. Leo "grabbed [him] by the foot" as he climbed but Moya "was able to yank [him]self up" "and the dog slipped off [his] foot." *Id.* at 159.

At this point, Moya stood safely on the roof well aware that Leo roamed below. But instead of surrendering, Moya continued to flee. He jumped into the

2

neighboring yard and began throwing things and running. Leo leapt over a wall separating the two properties and tracked Moya down. Aguilar followed Leo over the wall and caught up within seconds. He found Moya lying face down on the ground with Leo biting and holding him by the left arm. Aguilar grabbed hold of Leo while other officers arrived and handcuffed Moya. Aguilar then commanded Leo to release Moya. Leo's "bite lasted no longer than twenty seconds." Supp. R. at 13.

Moya sued to recover damages for the injuries Leo inflicted on him during their second encounter. He claimed Aguilar violated his Fourth Amendment rights by, among other things, using excessive force against him via Leo. He also alleged that Gurule violated his Fourth Amendment rights by failing to stop Aguilar's use of excessive force and that the City of Clovis should be held liable for these actions under *Monell v. Department of Social Services*, 436 U.S. 658 (1978).

The district court granted summary judgment to Defendants. It applied the doctrine of qualified immunity and rejected Moya's Fourth Amendment claims against Aguilar because, among other things, his decision to deploy Leo was constitutionally reasonable under the circumstances. It then rejected Moya's claims against Gurule and the City of Clovis because those claims depended on a finding that Aguilar violated Moya's constitutional rights.

Moya filed a notice of appeal and a motion with the district court to proceed *in forma pauperis* on appeal. The district court denied Moya's *in forma pauperis* motion because he did "not show the existence of a reasoned, nonfrivolous argument

3

on the law and facts in support of the issues raised on appeal." Supp. R. at 33 (internal quotation marks omitted).

## II. Discussion

## A. Merits

"We review de novo the district court's grant of qualified immunity to [a] [d]efendant in the context of summary judgment." *Culver v. Armstrong*, 832 F.3d 1213, 1217 (10th Cir. 2016).

Moya proceeds pro se on appeal.[1] "Although a pro se litigant's pleadings are to be construed liberally and held to a less stringent standard than formal pleadings drafted by lawyers, this court has repeatedly insisted that pro se parties follow the same rules of procedure that govern other litigants." *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005) (brackets, citation, and internal quotation marks omitted). "An appellant's opening brief must identify 'appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies.'" *Bronson v. Swensen*, 500 F.3d 1099, 1104 (10th Cir. 2007) (quoting Fed. R. App. P. 28(a)(8)(A)).

### 1. Reasonableness of Aguilar's Use of Force

Moya's first issue on appeal asks: "[A]fter being attacked by [officer] Leo was the use of officer Leo [really] needed[?]" Aplt. Br. at 3. He argues that the

---

[1] Moya had counsel before the district court.

district court failed to consider the "grounds to show [and] prove that force was needed to [r]estrain" him. *Id.* at 4.

In a Fourth Amendment excessive force case like this one, "[t]he ultimate question is whether the officers' actions are objectively reasonable in light of the facts and circumstances confronting them." *Emmett v. Armstrong*, No. 18-8078, --- F.3d ---, 2020 WL 5200909, at *5 (10th Cir. Sept. 1, 2020) (internal quotation marks omitted). "This is a 'totality of the circumstances' analysis." *Reavis v. Frost*, 967 F.3d 978, 985 (10th Cir. 2020) (quoting *Tennessee v. Garner*, 471 U.S. 1, 9 (1985)). "[W]e specifically consider . . . : (1) 'the severity of the crime at issue,' (2) 'whether the suspect poses an immediate threat to the safety of the officers or others,' and (3) 'whether he is actively resisting arrest or attempting to evade arrest by flight.'" *Id.* (quoting *Graham v. Connor*, 490 U.S. 386, 396 (1989)).

The district court's decision contains extended discussion regarding the reasonableness of Aguilar's decision to deploy Leo in light of the circumstances confronting Aguilar. *See* Supp. R. at 14–20. The court concluded: "Given the numerous warnings, [Moya's] history of fleeing, his flight from the officers on the instant day, and the potential danger to officers and bystanders of a prolonged chase through a residential neighborhood which included [Moya] jumping on roofs and running through backyards, deploying Leo was a reasonable choice." *Id.* at 20. The district court's decision also addressed the reasonableness of Aguilar's delay in calling Leo off after Leo apprehended Moya:

5

When Leo left . . . Aguilar's side to jump the wall into the yard where he detected [Moya's] scent, . . . Aguilar immediately followed. Officer Aguilar was always close enough to Leo for Leo to be able to hear any verbal commands. Leo was not out of Officer Aguilar's sight for more than ten seconds. The longest Leo's bite could have lasted was twenty seconds and Officer Aguilar ended it ten seconds after he reached [Moya] and immediately upon [Moya's] handcuffing. [Moya] alleges that he was in the act of surrendering when Leo bit him, but . . . Aguilar had no way of knowing this fact. When . . . Aguilar approached [Moya], [he] was lying face down, but it is unclear whether he was already on the ground or was taken down by Leo. In light of [Moya's] history of evasion both before and during the subject incident, it was reasonable for . . . Aguilar to believe that [Moya] had still been fleeing and would continue to flee if given the opportunity. Therefore, it was reasonable for . . . Aguilar to wait until other officers were able to handcuff [Moya] before commanding Leo to let go.

*Id.* at 20–21.

Moya's brief does not address the district court's decision and does not cite the record. Contrary to Moya's suggestion, the district court did consider whether the evidence supported his excessive force claim. To the extent Moya argues that the district court erred in evaluating the reasonableness of Aguilar's use of force, we decline to consider this argument because Moya has not explained how the district court erred. *See Reedy v. Werholtz*, 660 F.3d 1270, 1275 (10th Cir. 2011) (noting that where "[t]he argument section of [an appellant's] opening brief does not challenge the [district] court's reasoning on [a] point[, w]e . . . do not address the matter"). We therefore affirm the district court's conclusion that Aguilar's use of force was constitutionally reasonable.

## 2. Issues Not Presented to the District Court

Moya contends on appeal that unnamed officers violated his unspecified rights by releasing him without taking him to jail, allegedly in contravention of Clovis city policy. But Moya's complaint does not allege a cause of action based on officers' failure to incarcerate him. And Moya failed to provide a record citation demonstrating that he raised this issue to the district court. *See Pac. Frontier v. Pleasant Grove City*, 414 F.3d 1221, 1238 (10th Cir. 2005) (noting that "parties must cite the precise reference in the record where the issue was raised and ruled on." (emphasis and internal quotation marks omitted)). In our independent review of the record, we did not locate any argument presented to the district court that officers violated Moya's rights by releasing him.[2]

"When an appellant fails to preserve an issue and also fails to make a plain-error argument on appeal, we ordinarily deem the issue waived (rather than merely forfeited) and decline to review the issue at all—for plain error or otherwise." *United States v. Leffler*, 942 F.3d 1192, 1196 (10th Cir. 2019). "Under such circumstances,

---

[2] Moya did argue to the district court that officers' decision to wait "for close to two weeks before booking him on the warrant that the officers claim justified the use of a canine attack" supported his argument that he did not pose a threat of violence on the date of his arrest. R. at 210. But this is a different argument than the one Moya presses on appeal. *See Little v. Budd Co.*, 955 F.3d 816, 821 (10th Cir. 2020) ("[A]bsent extraordinary circumstances, arguments raised for the first time on appeal are waived. This is true whether the newly raised argument is a bald-faced new issue or a new theory on appeal that falls under the same general category as an argument presented" to the district court. (citation and internal quotation marks omitted)).

the failure to argue for plain error and its application on appeal surely marks the end of the road for an argument not first presented to the district court." *Id.* (ellipses and internal quotation marks omitted). Moya does not argue for plain error review and we therefore decline to consider Moya's argument related to his release without incarceration.

Moya further urges reversal due to "other issues [his] attorneys never mention[ed]." Aplt. Br. at 4. He does not identify these issues or argue for plain error review. We therefore decline to consider this argument for the reasons previously stated.

## B. Motion to Proceed *in forma pauperis*

Moya filed a motion with this court to proceed *in forma pauperis*. To be granted *in forma pauperis* status, Moya must show "a financial inability to pay the required filing fees and the existence of a reasoned, nonfrivolous argument on the law and facts in support of the issues raised on appeal." *Watkins v. Leyba*, 543 F.3d 624, 627 (10th Cir. 2008) (brackets and internal quotation marks omitted). Because he is incarcerated, Moya must also submit "a certified copy of [his prison] trust fund account statement." 28 U.S.C. § 1915(a)(2). Moya did not file the required account statement and we find no reasoned, nonfrivolous argument here. We therefore deny Moya's motion to proceed *in forma pauperis*.

### III. Conclusion

We affirm the district court's grant of summary judgment to Defendants. We deny Moya's motion to proceed *in forma pauperis* and direct him to make full and immediate payment of the outstanding appellate filing fee.

Entered for the Court

Carolyn B. McHugh
Circuit Judge